UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br>     Plaintiff,<br><br>    v.<br><br>STATE OF NEW YORK and<br>PUBLIC EMPLOYMENT RELATIONS<br>BOARD,<br>     Defendants. | Civil Action No. 1:25-cv-01283-GTS-ML |

## SECOND AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, the National Labor Relations Board, brings this civil action against Defendants, the State of New York and the Public Employment Relations Board, and alleges as follows:

### INTRODUCTION

1. This is an action for declaratory and injunctive relief to prevent the enforcement of New York's recently enacted statute, S.8034A (attached as Exhibit A), which amends Section 715 of the New York State Employment Relations Act, N.Y. Lab. Law § 715 (2025). Newly amended Section 715 unlawfully conflicts with the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, by attempting to regulate private sector labor relations already governed by federal law.

2. The National Labor Relations Board seeks a declaration that S.8034A is preempted by the National Labor Relations Act and an injunction against its enforcement, as it creates a parallel regulatory system that undermines the federal labor policy Congress designed to be national in scope.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, as it arises under the laws of the United States, specifically the Supremacy Clause of the United States Constitution (Article VI, Clause 2) and the National Labor Relations Act, as amended, 29 U.S.C. § 151 *et seq*.

4. This Court has authority to provide the relief requested under the U.S. Constitution, 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent legal and equitable powers.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendants reside in this district and a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

6. Plaintiff National Labor Relations Board (NLRB or Board) is a federal agency created in 1935 by Congress, which vested it with the authority to enforce the National Labor Relations Act (NLRA or Act) and regulate most labor relations in the private sector.

7. Defendant, the State of New York, is a state of the United States.

8. Defendant, the Public Employment Relations Board (PERB), is an agency of the State of New York responsible for administering the New York State Employment Relations Act (SERA).

## BACKGROUND

9. The NLRA guarantees "employees," as described by Section 2(3) of the Act (29 U.S.C. § 152(3)), definitive rights in Section 7 (29 U.S.C. § 157), enforces those rights by making certain employer and union activity unfair labor practices in Section 8 (*id*. at § 158), and provides for the designation and election of bargaining representatives in Section 9 (*id*. at § 159).

It also empowers the Board, in Section 10 (*id*. at § 160), to enforce all these provisions and to prevent "any person" from engaging in unfair labor practices.

10. Section 7 of the Act specifically states, *inter alia*, that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities[.]" *Id.* at § 157.

11. Section 8(a)(1) of the Act specifically states that "[i]t shall be an unfair labor practice for an employer … to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [S]ection 7[.]" *Id.* at § 158(a)(1).

12. States are prohibited from regulating any "activity that the [Act] protects, prohibits or arguably protects or prohibits," *Wisconsin Dep't of Indus. v. Gould Inc.*, 475 U.S. 282, 286 (1986)—*i.e.*, activity that is subject to the regulatory jurisdiction of the NLRB. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244–46 (1959).

13. Section 10(a) of the NLRA, 29 U.S.C. § 160(a), grants the NLRB exclusive authority to prevent unfair labor practices affecting commerce.

14. Section 14(c) of the Act, 29 U.S.C. §164(c), allows the NLRB to decline jurisdiction in certain cases, but this discretion remains solely with the Board.

15. The NLRB's authority is exclusive in matters covered by the NLRA, and it preempts state regulation in these areas. This preemption ensures a uniform national labor policy by preventing states from enacting laws or regulations that could disrupt the balance established by federal law.

16. The PERB is a state agency in New York created by Section 205 of the New York civil service law. N.Y. Civ. Serv. Law § 205. PERB, *inter alia*, enforces SERA. N.Y. Lab. Law § 701(9).

17. Section 703 of SERA states, *inter alia*, that "[e]mployees shall have the right of self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection[.]" *Id*. at § 703.

18. Section 706 of SERA directs and empowers PERB "to prevent any employer from engaging in any unfair labor practice." *Id*. at § 706.

19. Section 704(10) of SERA states that it is an unfair labor practice for an employer "[t]o do any acts ... which interfere with, restrain or coerce employees in the exercise of the rights guaranteed by [Section 703]." *Id*. at § 704(10).

20. Prior to September 5, 2025, Section 715 of SERA specifically stated that it did not apply to "employees [that] are subject to and protected by the provisions of the [NLRA.] *Id*. at § 715; Exhibit A.

21. On September 5, 2025, Kathy Hochul, Governor of the State of New York, signed into law S.8034A, which amends Section 715 of SERA. Upon signing, S.8034A took immediate effect. Exhibit A.

22. S.8034A's amendments to Section 715 of SERA empower the PERB to enforce collective bargaining agreements and handle charges related to labor disputes that would otherwise fall under the jurisdiction of the NLRB. S.8034A further empowers the PERB to certify bargaining representatives and enforce collective bargaining agreements.

23.     The NLRB has previously exercised jurisdiction over labor disputes involving, specifically, Amazon.com Services LLC's (Amazon) JFK8 fulfillment center (JFK8) and the Amazon Labor Union - International Brotherhood of Teamsters Local 1 (ALU). *See, e.g., Amazon.com Services LLC*, 373 NLRB No. 136 (Nov. 13, 2024), *petition for review filed*, No. 24-13819 (11th Cir. Nov. 21, 2024); *Amazon.com Services LLC,* 373 NLRB No. 92 (Aug. 29, 2024).

24.     On March 10, 2025, the ALU filed a charge with the Board (NLRB Case No. 29-CA-361669, attached as Exhibit B) alleging that Amazon unlawfully disciplined JFK8 employee Brima Sylla (Sylla) in violation of, *inter alia*, Section 8(a)(1) of the Act. That charge remains pending and is currently being investigated by the Board's regional office.

25.     On September 15, 2025, the ALU filed an unfair labor practice charge with PERB (attached as Exhibit C) alleging, pursuant to Section 706 of SERA, that Amazon violated Section 704(10) by terminating JFK8 employee Sylla.

26.     S.8034A further amends Section 715 of SERA to require the NLRB to seek declaratory relief in federal district court in order to assert its jurisdiction over private sector labor relations in New York, effectively displacing the NLRB's congressionally mandated jurisdiction.

27.     The enactment of S.8034A creates an instant conflict with the federal scheme because it disrupts the NLRB's exclusive authority to regulate most private sector labor relations.

## **CLAIM FOR RELIEF**

1.     Plaintiff incorporates by reference all allegations stated above.

2.     S.8034A is preempted by the NLRA under the Supremacy Clause of the United States Constitution, and empowers the PERB to regulate activity arguably protected and

5

prohibited by the Act, *Garmon*, 339 U.S. at 245, and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

3. The NLRB has not ceded its jurisdiction to the State of New York under Sections 10(a) or 4(c) of the Act. 29 U.S.C. §§ 160(a), 164(c).

4. S.8034A unlawfully usurps the NLRB's authority by attempting to regulate areas explicitly reserved for federal oversight, creating a parallel regulatory framework that conflicts with the NLRA. This encroachment disrupts the balance of federal and state powers, as Congress desired that "centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid those diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies." *Garner v. Teamsters*, 346 U.S. 485, 490–91 (1953).

5. Plaintiff seeks a declaratory judgment and an injunction to prevent the enforcement of S.8034A, as it conflicts with federal law and disrupts the careful balance of interests established by Congress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that S.8034A is preempted by the National Labor Relations Act and is therefore invalid and unenforceable;

B. Preliminarily enjoin the State of New York and the Public Employment Relations Board from taking action to implement or enforce S.8034A, pending the final resolution of this action;

C. Permanently enjoin the State of New York and the Public Employment Relations Board from enforcing S.8034A;

D. Award Plaintiff its costs and reasonable attorneys' fees; and

E.  Grant such other and further relief as the Court deems just and proper.

        Respectfully submitted,

**NATIONAL LABOR RELATIONS BOARD**

NANCY E. KESSLER PLATT
*Associate General Counsel*
Division of Legal Counsel
Nancy.Platt@nlrb.gov

DAWN L. GOLDSTEIN
*Deputy Associate General Counsel*
Division of Legal Counsel
Dawn.Goldstein@nlrb.gov

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
Kevin.Flanagan@nlrb.gov

  /s/ Chad A. Wallace
CHAD A. WALLACE
*Trial Attorney*
Chad.Wallace@nlrb.gov
(202) 273-2489
Contempt, Compliance, and
  Special Litigation Branch
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570

Dated this 26th day of September 2025
in Washington, D.C.

Exhibit A

# STATE OF NEW YORK
_____

                                  8034--A
Cal. No. 1301

                         2025-2026 Regular Sessions

                            # IN SENATE

                              May 15, 2025
                             _____

   Introduced by Sen. RAMOS -- read twice and ordered printed, and when
     printed to be committed to the Committee on Labor -- reported favora-
     bly from said committee, ordered to first and second report, ordered
     to a third reading, amended and ordered reprinted, retaining its place
     in the order of third reading

   AN ACT to amend the labor law, in relation to disputes between employers
     and recognized employee organizations

       The People of the State of New York, represented in Senate and Assem-
     bly, do enact as follows:

  1     Section 1. Section 715 of the labor law, as amended by chapter 890 of
  2   the laws of 1968, is amended to read as follows:
  3     § 715. Application of article. **1.** The provisions of this article shall
  4   not apply to: [(1)] **(a)** employees of any employer who concedes to and
  5   agrees with the board that such employees are subject to and protected
  6   by the provisions of the [national labor relations act or the] federal
  7   railway labor act; [or (2)] **(b) employees where the national labor**
  8   **relations board successfully asserts jurisdiction over any employer,**
  9   **employees, trades, or industries pursuant to an order by the federal**
 10   **district court established under article three of the United States**
 11   **constitution; or (c)** employees of the state or of any political or civil
 12   subdivision or other agency thereof.
 13     **2. For all other employees, the board shall, upon application and**
 14   **verification, promptly certify the exclusive bargaining representative**
 15   **of any bargaining unit previously certified by another state or federal**
 16   **agency. All existing terms and conditions of employment between a certi-**
 17   **fied exclusive bargaining representative and an employer shall remain in**
 18   **full force and effect through the board's verification process.**
 19     § 2. This act shall take effect immediately.

     EXPLANATION--Matter in _italics_ (underscored) is new; matter in brackets
                          [-] is old law to be omitted.
                                                             LBD13123-03-5

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|---|---|
| 29-CA-361669 | 3/10/2025 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

**a. Name of Employer**
Amazon JFK8

**b. Tel. No.** (718) 494-7201

**c. Cell No.**

**f. Fax. No.**

**d. Address** *(Street, city, state, and ZIP code)*
546 Gulf Ave.
NY Staten Island 10314

**e. Employer Representative**

**g. e-mail** hr@amazon.com

**h. Number of workers employed** 5000

**i. Type of Establishment** *(factory, mine, wholesaler, etc.)*
Others

**j. Identify principal product or service**
Warehouse

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections)  3,1  of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Willie James Burden Jr.
ALU - IBT Local #1

**4a. Address** *(Street and number, city, state, and ZIP code)*
600 Gulf Ave UNIT C
NY Staten Island 10314

**4b. Tel. No.** (910) 417-9365

**4c. Cell No.**

**4d. Fax No.**

**4e. e-mail** wburden@teamster.org

**5.** Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

### 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

*Willie Burden Jr.* (signature)

(signature of representative or person making charge)

Willie J. Burden Jr.
(Print/type name and title or office, if any)

Address: 25 Louisiana Avenue, N.W. Washington DC 20001

Date: 03/10/2025 04:28:47 PM

Tel. No. (202) 624-6951
Office, if any, Cell No. (910) 466-4317
Fax No. (202) 624-6884
e-mail wburden@teamster.org

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

## Basis of the Charge

**8(a)(3)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) joined or supported a labor organization and in order to discourage union activities and/or membership.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Brima Sylla | Write Up/Denial of Opportunity to Appeal | 01/17/2025 |

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Brima Sylla | Write Up/Denial of Opportunity to Appeal | 01/17/2025 |

*** **DO NOT WRITE IN THIS BOX (For Internal Use Only)** ***

Case No.:

Date Filed:

**NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD**
• Private Sector •

## UNFAIR LABOR PRACTICE CHARGE FORM

**Instructions**:
- If you are unsure whether this form applies to you, please first review the "Guide for Individuals Representing Themselves Under the SERA," which is located on our website here.
- Answer every question completely.
- If more space is required, attach additional sheets, noting the item number(s) in your response.
- File the form by email to sera@perb.ny.gov; by mail to New York State Public Employment Relations Board, P.O. Box 2074, ESP Agency Bldg 2, Floor 18, Albany, NY 12220-0074; or by fax to (518) 457-2664.

**Purpose of this form**: To allege that an employer, employee(s), and/or labor organization has engaged in, and/or is engaging in, unfair labor practices within the meaning of Section 704 and/or 704-b of the New York State Employment Relations Act ("SERA") (Click here to read the SERA).

**The Charging Party** (the party making this charge) is: ■ Employee/Labor Organization    ☐ Individual    ☐ Employer

| 1. Charging Party | | |
|---|---|---|
| Name & Address (include number, street, city, state, zip code):<br>Amazon Labor Union - International Brotherhood of Teamsters (ALU-IBT) Local 1 | Telephone number (include area code):<br>848-210-0636 | Email address:<br>info@amazonlaborunion.org |

| 2. Charging Party's Attorney or Other Representative, if any<br>One with whom PERB should communicate about this matter and who will accept service of papers on Charging Party's behalf | | |
|---|---|---|
| Name & Address (include number, street, city, state, zip code):<br>Jeanne Ellen Mirer, Esq.<br>300 Cadman Plaza West, 12th Floor<br>Brooklyn, NY 11201 | Telephone number (include area code):<br>313-515-2046 | Email address:<br>jmirer@julienmirer.com |

| 3. Respondent Employer, Labor/Employee Organization, or Farm Laborer Against Which this Charge is Brought | | |
|---|---|---|
| Name & Address (include number, street, city, state, zip code):<br>Amazon.com LLC JFK8 Fulfillment Center<br>Mohit Mengale, General Manager<br>546 Gulf Ave., Staten Island, NY 10314 | Telephone number (include area code):<br>718-494-7201 | Email address:<br>unknown |

| 4. Employer's Business | |
|---|---|
| General nature of Employer's business:<br>Sales / logistics | Approximate total number of employees:<br>5000 |
| General nature of work performed by employees involved in this charge:<br>Logistics, sorting, and related duties | Is Employer an agricultural employer?<br>☐ Yes    ■ No |

1

5. **Violations Alleged**:

    a. Pursuant to Section 706 of the New York State Employment Relations Act ("SERA"), the Charging Party hereby alleges that the above-named Respondent has engaged in, or is engaging in, an improper practice within the meaning of the following subsections of the SERA:

    ***Check the subsection(s) allegedly violated; you may check more than one:***

    | | | |
    |---|---|---|
    | ☐ 704(1) | ☐ 704(5) | ☐ 704-b(1) – FLFLPA/Agricultural only |
    | ☐ 704(2) | ☐ 704(6) | ☐ 704-b(2)(a) – FLFLPA/Agricultural only |
    | ☐ 704(3)(a)(1) | ☐ 704(7) | ☐ 704-b(2)(b) – FLFLPA/Agricultural only |
    | ☐ 704(3)(a)(2) | ☐ 704(8) | |
    | ☐ 704(3)(b) | ☐ 704(9) | |
    | ☐ 704(3)(c) | ☐ 704(9) | |
    | ☐ 704(4) | ■ 704(10) | |
    | | ☐ 704(11) | |

    b. Specify **in detail** the alleged violation(s) – please specify what happened and how it violated the SERA. Include names, dates, times, places, and the particular actions constituting each violation. Please include the titles and work locations of the individuals involved in the alleged unfair labor practice(s).

    ***Attach additional sheets, if necessary. Failure to supply sufficient factual detail may result in a delay in processing or a dismissal of the charge.*** You must label/explain each attached exhibit and document. Your charge may not consist solely of attachments.

    > See attached

    c. If you are alleging that any employee(s) has been discharged, refused employment, or suffered discrimination in violation of Section 704 and/or 704-b of the SERA, please specify their name(s):

    > Brima Sylla

2

6. **Jurisdiction of Employers Which Are Not Agricultural Employers**[1] – If the Employer is **_not_** an agricultural employer, please answer the following questions on jurisdiction:

    a. The National Labor Relations Act (NLRA) is a federal law that applies to most private sector employers. The SERA is a New York State law that applies only where the federal law, the NLRA, does not. PERB has jurisdiction only with respect to the SERA.

    Has the National Labor Relations Board accepted or declined jurisdiction over the Employer?

    ☐ Accepted   ☐ Declined   ☐ Unknown

    b. If the NLRB has not declined jurisdiction over the Employer,[2] please provide any information you may have concerning the approximate percentage and volume of sales to, and purchases from, points outside New York State:

    SALES to points outside NYS:
    - Approximate value: $ _____
    - Approximate volume of Employer's total sales: _____%

    PURCHASES from points outside NYS:
    - Approximate value: $ _____
    - Approximate volume of Employer's total purchases: _____%

    c. If there are any other facts concerning interstate commerce and potential jurisdiction of PERB, please provide them here:

    > Jurisdictional requirements have been met due to the recent amendment to NY Labor Law Section 715, under which PERB now has jurisdiction over this matter involving a nationwide employer.

SUPPORTING DECLARATION

I, the undersigned, declare that I am the Charging Party named above, or their Representative, and that I have read the above charge consisting of this and the attached additional page(s), and that I am familiar with the facts alleged therein, which facts I know to be true, except as to those matters alleged on information and belief, which matters I believe to be true. I declare the contents of this charge to be true under penalty of perjury under the laws of the State of New York.

Signature: _Jeanne Mirer_ _____

Name: Jeanne Ellen Mirer

Title: Attorney

Date: 9-15-25

---

[1] Agricultural employers are explicitly under the jurisdiction of the SERA, which was specifically amended to cover agricultural employers and farm laborers under the Farm Laborers' Fair Labor Practices Act ("FLFLPA") and the State Employment Relations Act ("SERA").

[2] If you are unsure of whether the NLRA would apply, before submitting this Unfair Labor Practice Charge Form to PERB, you are strongly encouraged to seek guidance from the NLRB or research its jurisdictional standards, which are discussed on its website.

3

## Attachment to ULP Charge – Section 5

The Company has violated Section 704 of SERA as follows:

1. Brima Sylla was employed at Amazon.com LLC JFK8 Fulfillment Center's ("Amazon" or "Company") JFK8 facility ("the facility") as a Stower, starting in or around 2019 until 2020, then starting again in or around 2021 until on or about August 9, 2025.

2. As a Stower, Sylla worked in the Stow department at the facility, where he was responsible for scanning products before they were moved to certain locations within the facility. During 2025, he was on a flex schedule, which does not require him to work a 40-hour week.

3. Throughout the campaign to organize a union at the facility, Sylla was actively involved in various aspects of organizing.

4. During the union representation election at the facility in late March 2022, Sylla acted an Observer for the Union.

5. Sylla was elected Vice President of Charging Party Amazon Labor Union – International Brotherhood of Teamsters (ALU-IBT) Local 1 ("Union") in or around July 31, 2024, and maintains that position to date. He was the last Union executive board member working in that facility because the others were terminated.

6. In December 2024, employees represented by the Union held a strike at the facility. Sylla was a leader in executing the strike, and a group of employees he was responsible for leading were the first to walk out of the facility on strike.

7. Starting before 2025 and continuing until his unlawful discharge, Sylla regularly brought Union flyers to the facility and distributed them throughout the facility. Sylla as the only executive of the Union working in the warehouse also left flyers in a plastic box in the breakrooms at the facility with the union marking for workers to pick up during break times.

8. Through such activity and related activity, Sylla has become a prominent Union supporter within the facility, and is known throughout the facility and publicly as a leader in the Union.

9. Starting after the December 2024 strike and continuing, Sylla noticed the Union flyers he had posted and placed in non-work areas of the facility had been removed on a frequent basis. Sylla complained about the removal of the flyers to Amazon representatives on a regular basis. Including the General Manager.

1

10. At various points in 2025, Sylla spoke with Amazon representatives Ariana Loca (Senior Operations Manager), Lee (LNU) (HR Manager), Jack (LNU) (Manager), and Mohit Mangale (General Manager) about the flyers being removed.

11. Upon information and belief, Amazon and/or its agents removed the Union flyers Sylla had posted and placed in non-work areas of the facility and Sylla had conversations with management representatives as to where the flyers were taken.

12. Sylla visited Amazon's Human Resources department in 2025 and met with other managers as well – most often to complain about Union flyers being removed and he was the only one to do so. Whenever he went to HR, he usually had to wait on a line of employees for an extended period of time to speak with a Company representative. However, Amazon only recorded each visit using the time he actively met with a representative (a matter of minutes), but excluded the time he spent waiting on line. The time he spent waiting in line to address Amazon's improper removal of union literature was recorded as if it were work time during which Sylla did not perform any work activities, thus negatively affecting his recorded productivity.

13. Whenever possible, Sylla attempted to make visits to Human Resources during his break times. However, given the length of time he had to wait, often his break ended and work time began while he was still on line to meet with an Amazon representative.

14. His other 2025 visits to HR included trying to address time and schedule issues and regularly accompanying bargaining-unit employees when those employees were required to meet with representatives of Amazon, for the purpose of acting as the employees' Union representative, and to provide translation so that management could address their concerns, as he is fluent in Arabic and French. When accompanying employees to these meetings, Sylla wore a jacket with the Union logo and name.

15. During these times, Amazon representatives prohibited Sylla from accompanying employees to meetings in such a capacity. When doing so, Amazon representatives told Sylla words to the effect that Amazon did not recognize his right to accompany co-workers as a Union representative, that the Union was a third party, and that Amazon did not recognize the Union as employees' collective bargaining representative. Sylla had such conversations with Amazon Managers Adam Nelson, Ariana Loca, Aaron Parsons, and other Company representatives.

16. When Sylla had meetings with Amazon representatives in Human Resources and with other managers, as described above, he asked the Company representatives present to make sure his time was recoded, so that it did not appear as idle or unproductive time in his record.

2

17. Before December 2024, Amazon representatives often scanned Sylla's identification badge during meetings with Human Resources, for the purpose of coding his time in the meeting correctly. After the December 2024 strike, Amazon representatives stopped scanning his badge or decreased the frequency with which they scanned his badge during such meetings. Instead, they told him to just advise his direct managers about his time in HR.

18. On or about August 9, 2025, Amazon terminated Sylla's employment. Amazon cited productivity as the grounds for termination. *See* termination notice dated August 9, 2025, attached hereto as **Attachment A**.

19. In addition to the above coding issues, Sylla was also subject to the below, which also affected his time records, all of which he addressed with management without success.

20. As part of Sylla's duties in the Stow department, employees brought him pallets of merchandise for him to scan. Upon information and belief, it is those employees' duty to open boxes on the pallets, which Sylla was then responsible for scanning before the items were moved elsewhere in the facility. However, the employees bringing him the pallets regularly failed to open the boxes, necessitating Sylla opening them. Because of these circumstances, Sylla could not perform his scanning duties at a desired pace, and thus his productivity was recorded as lower than it would have been if the employees bringing him the pallets performed their duties by opening the boxes.

21. Similarly, since machines regularly broke down without immediate repair, when Sylla's machine broke down, an Amazon representative directed him to move to a different, more distant work station. On multiple occasions, Sylla went to these other work stations only to find another employee already occupied them, necessitating him walking back to his original location. On some occasions, this happened with multiple directives to go to other work stations. All of this time travelling between work stations was recorded as idle or unproductive time within Amazon's system, thus negatively affecting Sylla's recorded productivity in 2025.

22. Each time his work station broke down, including when he had to walk between work stations, Sylla asked Amazon representatives to make sure his time was coded properly, so it did not affect his productivity.

23. Sylla also had a medical accommodation that allowed him to use the bathroom at the facility every two (2) hours, which he often did.

24. Despite granting Sylla's medical accommodation, Amazon counted the time he used the bathroom against him when calculating his productivity in 2025.

3

25. Starting in or around January 2025 and continuing until his termination, representatives of Amazon approached Sylla with increasing frequency and asked him what he had been doing during specific periods of work time. The representatives said the Company's system marked these periods as showing Sylla being idle or having low productivity. Sylla explained he was engaging in the activities described in the paragraphs above, and asked the Amazon representatives to make sure the coding for those time periods was corrected to reflect those activities. However, even when he raised these issues with the Company representatives, coding mistakes either remained in his record, or the mistakes were only partially addressed.

26. At various points in 2025, Sylla spoke with Amazon representatives Adam Nelson, Ariana Loca, Lee (LNU), Jack (LNU), and Mohit Mengale about the need to recode his time.

27. Employees are not able to correct such coding errors themselves, and must ask an Amazon representative to correct them.

28. While Sylla did not have a way to see if Amazon representatives correctly recoded his time when he asked them to, indications he received upon receiving discipline showed that the representatives did not correctly recode his time despite his valid requests and explanations.

29. Despite Sylla's numerous requests to have time coded properly or recoded to account for the activities described above, Amazon issued him a series of disciplines for low productivity, starting in early 2025. Amazon issued him: two Documented Coachings; a First Written Warning dated April 9, 2025 (attached hereto as **Attachment B**); a Second Written Warning dated May 21, 2025 (attached hereto as **Attachment C**); and a Final Written Warning dated June 15, 2025 (attached hereto as **Attachment D**).

30. By the above conduct, Amazon representatives and agents intentionally and negligently created issues detrimentally affecting his recorded productivity.

31. By the above conduct, Amazon representatives and agents deliberately and artificially lowered Sylla's recorded productivity.

32. Amazon calculated his productivity as described above and lowered Sylla's recorded productivity in order to artificially create reasons to discipline and ultimately discharge him.

33. Amazon lowered Sylla's recorded productivity, issued the disciplines described above, and terminated his employment in retaliation for, and because of Sylla's various activities with and in support of the Union, particularly his leadership in the December 2024 strike and his regular complaints in 2025 about Union flyers being removed from the workplace.

34. This termination is just the latest example of Amazon's efforts to squelch union activities and support at JFK8. Prior to the time period at issue here, Amazon has engaged in an extensive and longstanding anti-union campaign at the facility. Specifically, Amazon has fought unionization at JFK8 from before the time the union won the election in April 2022 to continues to do so to date, including but not limited to unlawfully firing employees and appealing the Union's certification at the National Labor Relations Board and in the courts. And, over the past year, it has been challenging the very constitutionality of the National Labor Relations Board's structure to avoid being held accountable for its actions and obligations.

35. When Sylla was informed he was being terminated, an Amazon representative told him it was triggered by some aspect of his performance on July 29. He asked Amazon for documentation of this alleged performance, but Amazon never gave him such documentation.

36. He appealed his termination and was advised on around the same date that his appeal was denied.

37. He filed a complaint with Amazon's Ethics Department over his termination, which is still pending.