UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEW YORK and<br>PUBLIC EMPLOYMENT RELATIONS<br>BOARD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:25-cv-1283-GTS-ML<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

NANCY E. KESSLER PLATT
*Associate General Counsel*
Division of Legal Counsel

DAWN L. GOLDSTEIN
*Deputy Associate General Counsel*
Division of Legal Counsel

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
Contempt, Compliance, and Special Litigation
Branch

CHAD A. WALLACE
*Trial Attorney*
Contempt, Compliance, and Special Litigation
Branch

NATIONAL LABOR RELATIONS BOARD
1015 Half Street, SE
Washington, DC 20570
(202) 273-2489

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................... ii

**PRELIMINARY STATEMENT** .................................................................................... 1

**BACKGROUND** ............................................................................................................. 2

   A.   The National Labor Relations Act ........................................................................ 2

   B.   The National Labor Relations Board's Administration of the Act .................................... 3

   C.   The Current Status of the NLRB ........................................................................ 6

   D.   The New York State Employment Relations Act, the Public Employment Relations Board, and S.8034A ................................................................................................................ 8

   E.   Conflict Arises Between PERB and the NLRB Over the Regulation of Labor Relations at Amazon's JFK8 Facility ........................................................................................... 10

**ARGUMENT** .................................................................................................................. 11

   F.   Legal Standard ................................................................................................... 11

   G.   The NLRB Is Likely to Prevail in Showing that the NLRA Preempts S.8034A ............. 11

      i.   *Bethlehem Steel* Controls and Precludes the State of New York and PERB From Regulating Conduct that the NLRA Regulates ..................................................... 11

      ii.   *Garmon* Preemption ..................................................................................... 14

      iii.   Obstacle Preemption and the NLRA ........................................................... 16

      iv.   The Board Has Neither Ceded nor Declined Jurisdiction Over Private Sector Labor Relations in the State of New York in Such a Way as to Permit New York to Supplant the NLRA 17

   H.   The Exclusive Regulation of National Labor Policy by the NLRB Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction ..................................................... 18

   I.   A Preliminary Injunction is in the Public's Interest and the Harm to New York and PERB Will Be Comparatively Slight as Compared to the Significant Harm to the NLRA and the Board if S.8034A Is Not Preliminarily Enjoined ................................................... 23

**CONCLUSION** ............................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am., Div. 998 v. Wisconsin Emp. Rels. Bd.*,
   340 U.S. 383 (1951) ................................................................................ 17
*Amazon.com Services LLC*,
   373 NLRB No. 136 (Nov. 13, 2024) ........................................................ 21
*Amazon.com Services LLC*,
   373 NLRB No. 92 (Aug. 29, 2024) .......................................................... 21
*Arizona v. United States*,
   567 U.S. 387 (2012) ................................................................................ 16
Authority And Assigned Responsibilities of General Counsel of National Labor Relations Board,
   20 Fed. Reg. 2175-02 (1955) ..................................................................... 5
*Bethlehem Steel Co. v. New York State Lab. Rels. Bd.*,
   330 U.S. 767 (1947) ......................................................................... passim
*Boire v. Greyhound Corp.*,
   376 U.S. 473 (1964) .................................................................................. 2
*Chamber of Com. of U.S. v. Brown*,
   554 U.S. 60 (2008) .................................................................................. 20
*Chamber of Commerce of U.S. v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996) ................................................................ 20
*Eatz v. DME Unit of Loc. Union No. 3 of Int'l Bhd. of Elec. Workers, AFL-CIO*,
   973 F.2d 64 (2d Cir. 1992) ................................................................ 17, 18
*Garner v. Teamsters, Local Union No. 776*,
   346 U.S. 485 (1953) ............................................................................ 2, 21
*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*,
   598 U.S. 771 (2023) ................................................................................ 14
*Gov't Emps. Ins. Co. v. Tolmasov*,
   602 F. Supp. 3d 380 (E.D.N.Y. 2022) ..................................................... 22
*Guss v. Utah Lab. Rels. Bd.*,
   353 U.S. 1 (1957) .................................................................................... 17
*Hernandez v. State of New York*,
   173 A.D.3d 105 (2019) .............................................................................. 8
*Hines v. Davidowitz*,
   312 U.S. 52 (1941) .................................................................................. 16
*In re Volkswagen* ......................................................................................... 16
*Int'l Longshoremen Ass'n v. Davis*,
   476 U.S. 380 (1986) ................................................................................ 14
*Kansas City General Hospital*,
   225 NLRB 108 (1976) ............................................................................. 13

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010)................................................................. 18
*N.Y. Progress & Prot. PAC v. Walsh*,
  733 F.3d 483 (2d Cir. 2013) ............................................................. 24
*New Process Steel, L.P. v. NLRB*,
  560 U.S. 674 (2010) ............................................................................ 3
*New York Bay Cap., LLC v. Cobalt Holdings, Inc*.,
  456 F. Supp. 3d 564 (S.D.N.Y. 2020) ............................................. 22
*New York State Lab. Rels. Bd. v. Interborough News Co*.,
  170 Misc. 347 (Sup. Ct. 1939).............................................................. 8
*New York v. United States Dep't of Homeland Sec.*,
  969 F.3d 42 (2d Cir. 2020)......................................................... 11, 18
*NLRB v. Comm. of Interns & Residents*,
  566 F.2d 810 (2d Cir. 1977) ........................................... 2, 12, 13, 18
*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937)................................................................................. 2
*NLRB v. Nash-Finch Co.*,
  404 U.S. 138 (1971)........................................................................... 13
Regional Directors,
  Delegation of Authority, 26 Fed. Reg. 3911-02 (1961)....................... 4
*San Diego Building Trades Council v. Garmon*,
  359 U. S. 236 (1959).......................................................................... 14
*Sears, Roebuck & Co. v. Carpenters*,
  436 U.S. 180 (1978)..................................................................... 14, 15
*Sheehan v. U.S. Postal Serv.*,
  6 F. Supp. 2d 141 (N.D.N.Y. 1997) ................................................. 15
United States v. Alabama, 691 F.3d 1269, 1301 (11th Cir. 2012) ......... 18
*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ............................................................ 23
*United States v. South Carolina*,
  840 F. Supp. 2d 898 (D.S.C. 2011) ............................................. 19, 22
*Wilcox v. Trump*,
  775 F. Supp. 3d 215 (D.D.C. 2025) .................................................... 6
*Winter v. Nat. Res. Def. Council, Inc*.,
  555 U.S. 7 (2008) .............................................................................. 11
*Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc*.,
  475 U.S. 282 (1986) ............................................................. 14, 15, 21
*Yang v. Kosinski*,
  960 F.3d 119 (2d Cir. 2020) ............................................................. 18

**Statutes**

29 U.S.C. § 151.......................................................................................2, 21
29 U.S.C. § 153............................................................................................ 3, 5
29 U.S.C. § 157.......................................................................................2, 20

29 U.S.C. § 158 ................................................................................................................. 2
29 U.S.C. § 159 ............................................................................................................ 3, 21
29 U.S.C. § 160 ...................................................................................................... 3, 17, 23
29 U.S.C. § 164 ............................................................................................................... 17
45 U.S.C. § 151 ................................................................................................................. 9
N.Y. Civ. Serv. Law §§ 200–215 ..................................................................................... 8
N.Y. Lab. Law § 701 ........................................................................................................ 9
N.Y. Lab. Law § 704 .................................................................................................. 20, 21
N.Y. Lab. Law § 703 ....................................................................................................... 20
N.Y. Lab. Law § 715 .................................................................................................... 9, 10
N.Y. Lab. Law § 718 ........................................................................................................ 8
N.Y. Lab. Law § 705 ....................................................................................................... 10

**Regulations**

29 C.F.R. § 101 ............................................................................................................ 3, 5
29 C.F.R. § 102 ............................................................................................................ 3, 4
29 C.F.R. § 103 ............................................................................................................. 18
Order Contingently Delegating Authority to the General Counsel, 76 Fed. Reg. 69768-02 (2011)
    .................................................................................................................................... 6

Other Authorities

Walter P. Arenwald & Donald M. Landay, Representation Problems under the New York State
    Labor Relations Act, 8 U. Chi. L. Rev. 471 (April 1941) ..................................................... 8

## PRELIMINARY STATEMENT

Defendants, the State of New York and the Public Employment Relations Board (PERB), through recently enacted New York state law S.8034A, seek to usurp the authority and jurisdiction Congress entrusted to the National Labor Relations Board (NLRB or Board) to regulate national labor policy, through the National Labor Relations Act (Act). Newly enacted S.8034A amends the New York State Employment Relations Act (SERA) to reverse the presumption that the NLRB exclusively regulates most private sector labor relations in the State of New York; instead, it requires the Board to seek declaratory relief in federal district court to assert its congressionally granted jurisdiction.

S.8034A and the authority it grants to PERB are preempted by the Act and the NLRB. Accordingly, a preliminary injunction is necessary under the Supremacy Clause of the United States Constitution and federal law. The Board will show that it is likely to succeed on the merits of its case because there is long-settled Supreme Court law demonstrating that the present clash of S.8034A and the Act cannot stand and must be resolved in the Board's favor. The Board will also demonstrate that it is likely to suffer irreparable harm due to two agencies—PERB and the NLRB—likely considering the same matters with the same parties but coming out with different conclusions, thus developing a divergent and confusing set of dueling jurisprudence. Finally, the balance of harms and the public interest favor an injunction as the harm to the Board, the Act, and national labor policy will be considerable, while any harm to the State of New York and PERB will be comparatively slight. The public interest is served by a singular uniform national labor policy set by the NLRB and thus favors an injunction. Accordingly, for the foregoing reasons, this Court should enter an injunction enjoining the State of New York and PERB from implementing S.8034A.

1

## BACKGROUND

**A.  The National Labor Relations Act**

Congress enacted the NLRA, as amended, 29 U.S.C. § 151, *et seq*. to create a national, uniform body of labor law and policy, and protect the stability of the collective bargaining process. *NLRB v. Comm. of Interns & Residents*, 566 F.2d 810, 815 (2d Cir. 1977) (citing legislative history of Act). These goals serve the purpose of promoting "industrial peace," *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 45 (1937), and avoiding "industrial strife which interferes with the normal flow of commerce." *Id.* (quoting 29 U.S.C. § 151). To accomplish these purposes, Congress established an integrated scheme of rights, protections, and prohibitions governing employee, employer, and union conduct during organizing campaigns, representation elections, and collective bargaining. Congress also created a centralized and independent administrative agency, the NLRB, to interpret and administer the NLRA and to resolve labor disputes. *See* 29 U.S.C. §§ 153–154, 160; *Garner v. Teamsters, Local Union No. 776*, 346 U.S. 485, 490 (1953).

The NLRA protects employees' rights to join or to decline to join a union, and it provides a mechanism for peacefully and expeditiously resolving questions concerning union representation. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 476–79 (1964). Particular sections of note are: (1) Section 7 sets forth the core rights of employees and that they "shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities," 29 U.S.C. § 157; (2) Section 8 defines and prohibits union and employer "unfair labor practices" that infringe on employees' Section 7 rights, 29

2

U.S.C. § 158; (3) Section 9 authorizes the Board to regulate representation elections by setting forth procedures for determining whether a majority of employees in an appropriate bargaining unit desire to exercise their rights to bargain collectively and for certifying election results, 29 U.S.C. § 159; and (4) Section 10 empowers the Board to enforce all these provisions and to prevent "any person" from engaging in unfair labor practices, 29 U.S.C. § 160.

### B.  The National Labor Relations Board's Administration of the Act

The Act designates officials responsible for prosecuting and adjudicating claims of unfair labor practices (ULP). Specifically, Section 3(d) establishes the Office of the General Counsel, and imbues that individual with "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints . . . , and in respect of the prosecution of such complaints before the Board." 29 U.S.C. § 153(d). That same section also directs the General Counsel to "exercise general supervision over [almost] all attorneys employed by the Board . . . and over the officers and employees in the regional offices." *Id.*

Section 3(a) establishes the five-seat Board, whose members are appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 153(a). Among other things, the Board issues decisions and final orders adjudicating the merits of the General Counsel's complaints, typically on review of an administrative law judge's (ALJ) recommended disposition. 29 C.F.R. § 101.12. Upon request and at its discretion, it also reviews representation matters decided by regional directors. 29 C.F.R. § 102.71. The Board requires a minimum of three sitting members for a quorum to execute its various statutory functions. 29 U.S.C. § 153(b); *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 687–88 (2010). In the absence of a quorum, the NLRB continues to function "to the greatest extent permitted by law[,]" including all regional office operations and representation proceedings. 29 C.F.R. §§ 102.178, 102.182.

The NLRB's headquarters is located in Washington, D.C. NLRB regional offices, which are located throughout the country, are where members of the public engage with the NLRB to initiate agency proceedings. Three of those regions are located in the state of New York: (1) Region 3 in Buffalo; (2) Region 2 in Manhattan; and (3) Region 29 in Brooklyn. In addition, a Region 3 "resident office" is located in Albany. The regional offices are headed by regional directors who, along with their respective staffs, exercise duties on behalf of both the General Counsel and the Board. Section 3(b) of the Act authorizes the Board to delegate its representation duties under Section 9 to regional directors, including determinations of bargaining units appropriate for collective bargaining and directing elections for employees to choose their exclusive bargaining representatives. *Id*. at § 153(b). In 1961, the Board formally delegated its authority to direct and adjudicate representation matters to regional directors, and they have maintained this function ever since. Regional Directors Delegation of Authority, 26 Fed. Reg. 3911-02 (1961).

Petitions for representation matters, such as elections, are managed by regional offices, which conduct investigations and hearings, manage secret ballot elections, certify election results, and make findings and issue rulings on objections and challenged ballots, all under the delegated authority of the regional director. 29 C.F.R. §§ 102.60–102.70. The Board retains limited review authority, and will, upon a party's filing of a request for review, examine a regional director's representation decision. *Id.* at § 102.71. Unless ordered by the Board, a request for review does not stay the regional director's certification of the election results or any action otherwise ordered by a regional director. *Id.* at § 102.67(c).

The NLRB does not initiate ULP proceedings on its own but acts only when a person files a charge alleging that another person has violated the Act. 29 U.S.C. § 160(b); 29 C.F.R.

§ 102.9. Upon the filing of a charge, the regional director and regional staff, under the General

Counsel's "general supervision[,] investigate the charge to determine whether it has merit and

whether to issue a complaint." 29 U.S.C. § 153(d); 29 C.F.R. §§ 101.4, 101.8.

Parties to a ULP proceeding can settle at every stage of the process, including before and

after a complaint is issued, and during an administrative hearing. 29 C.F.R. § 101.9. Prior to

issuing complaint, parties may settle the matter under the authority and discretion of the regional

director. *Id.* at § 101.7. If the regional director decides to issue a complaint, parties can still settle

the matter at any time prior to a formal hearing. 29 C.F.R. §§ 101.9, 102.51. Although

settlements at this stage typically require Board approval—referred to as a "formal" settlement—

the regional director retains the authority to broker an "informal" settlement that is not subject to

Board approval. *Id.* at § 101.9(b). If the parties do not settle prior to the administrative hearing,

regional staff under the direction of the regional director prosecute the case on behalf of the

General Counsel before an ALJ, who issues a decision at the conclusion of the hearing. 29

U.S.C. § 160(c); 29 C.F.R. §§ 101.10(a), 101.11(a). The ALJ's decision is filed with the Board,

and the parties then have an opportunity to file exceptions—i.e., an appeal of the ALJ's decision.

29 C.F.R. § 101.12(a). Ultimately, the Board issues its own decision and order. 29 C.F.R. §

101.12.

Where a union or employer has committed violations of the Act that threaten irreparable

harm to rights guaranteed under the Act and the Board's remedial authority, Section 10(j) of the

Act authorizes the Board to petition an appropriate federal district court for injunctive relief

pending final disposition of the administrative case before the Board. *Id.* at § 160(j). To initiate

Section 10(j) proceedings for preliminary injunctive relief, the General Counsel must first obtain

authorization from the Board. Authority And Assigned Responsibilities of General Counsel of

National Labor Relations Board, 20 Fed. Reg. 2175-02 (1955). In 2011, the Board contingently

delegated authority to the General Counsel to, among other things, approve Section 10(j)

litigation when the Board does not have a quorum. National Labor Relations Board Order

Contingently Delegating Authority to the General Counsel, 76 Fed. Reg. 69768-02 (2011).

### C.  The Current Status of the NLRB

On January 27, 2025, President Trump removed Board Member Gwynne A. Wilcox.

*Wilcox v. Trump*, 775 F. Supp. 3d 215, 222 (D.D.C. 2025). The legality of the President's

removal of Wilcox is the subject of ongoing litigation. *Wilcox v. Trump, et al.*, No. 25-5057

(D.C. Cir.). Wilcox's removal reduced the number of the Board's sitting members to two, and

therefore rendered the Board without the necessary quorum to execute its statutory duties.

*Wilcox*, 775 F. Supp. 3d at 222. (Cowen Decl. ¶ 3.) On February 1, 2025, President Trump

appointed William B. Cowen as Acting General Counsel of the Board, and his term of service

began when he was sworn in on February 3. (Cowen Decl. ¶ 1.) On July 17, 2025, President

Trump nominated Scott Mayer and James Murphy as Members of the Board; their nominations

are currently pending in the Senate.[1] On August 27, 2025, then-Chairman and Board Member

---

[1] "Nominations Sent to the Senate," White House Presidential Actions, July 17, 2025, available at https://www.whitehouse.gov/presidential-actions/2025/07/nominations-sent-to-the-senate-d743/. A hearing on their nominations is currently scheduled for October 1, 2025. *See* "Nominations of Scott Mayer to be a Member of the National Labor Relations Board, James Murphy to be a Member of the National Labor Relations Board, and Rosario Palmieri to be Assistant Secretary of Labor for Policy," Senate Committee on Health, Education, Labor and Pensions, https://www.help.senate.gov/hearings/nominations-of-scott-mayer-to-be-a-member-of-the-national-labor-relations-board-james-murphy-to-be-a-member-of-the-national-labor-relations-board-and-rosario-palmieri-to-be-assistant-secretary-of-labor-for-policy (last visited Sept. 30, 2025).

Marvin Kaplan's term expired,[2] leaving the Board with one member.[3]

Despite the lack of a Board quorum, the NLRB continues to function. (Cowen Decl. ¶ 4–6.) The regional offices, under the direction of the Office of the General Counsel, are able to resolve the overwhelming majority of cases before the need for a Board order. (Cowen Decl. ¶ 4.) For example, as described in the Agency's FY 2024 Performance and Accountability Report (PAR),[4] the public filed 21,300 unfair labor practice charges, of which 39.5 percent were found to have merit; of the meritorious cases, 96.3% were settled. *Id.* at 33. Further, 3,287 election petitions were filed. *Id.* During that same time, the Board decided 259 unfair labor practice and representation cases, which represented about one percent of the total number of such cases processed that year. *Id.* at 10.

Since the loss of quorum, regions continue to receive and investigate ULP charges. (Cowen Decl. ¶ 4.) Where complaints have been issued, those cases are proceeding to hearings before ALJs, and after post-hearing briefing, ALJs are issuing recommended decisions and orders. (Cowen Decl. ¶ 5.) In this time, ALJs have issued decisions in 96 cases.[5] Further, the regions are continuing to process representation petitions, hold elections, and resolve election

---

[2] "Members of the NLRB since 1935," National Labor Relations Board, https://www.nlrb.gov/about-nlrb/who-we-are/the-board/members-of-the-nlrb-since-1935 (last visited Sept. 30, 2025).

[3] "The Board," National Labor Relations Board, https://www.nlrb.gov/about-nlrb/who-we-are/the-board (last visited Sept. 30, 2025).

[4] "The National Labor Relations Board 2024 Performance and Accountability Report," available at https://www.nlrb.gov/sites/default/files/attachments/pages/node-130/nlrb_fy2024_par_508.pdf.

[5] "Administrative Law Judge Decisions," National Labor Relations Board https://www.nlrb.gov/cases-decisions/decisions/administrative-law-judge-decisions (last visited Sept. 30, 2025).

objections.[6] And the Acting General Counsel, through Board delegations described above, has authorized five cases for Section 10(j) proceedings. (Cowen Decl. ¶ 7–8.)

### D. The New York State Employment Relations Act, the Public Employment Relations Board, and S.8034A

In 1937, New York passed the New York State Labor Relations Act (NYSLRA), which was modeled after the NLRA and is sometimes referred to as the "Little Wagner Act." *New York State Lab. Rels. Bd. v. Interborough News Co.*, 170 Misc. 347, 348 (Sup. Ct. 1939). While the NLRA, passed two years before, was designed to regulate labor relations of employers engaged in interstate commerce, the NYSLRA was designed to regulate labor relations for parties engaged in commerce only within New York. *See* Walter P. Arenwald & Donald M. Landay, Representation Problems under the New York State Labor Relations Act, 8 U. Chi. L. Rev. 471 (April 1941). In 1991, NYSLRA became more commonly known as the New York State Employment Relations Act (SERA). N.Y. Lab. Law § 718; *Hernandez v. State of New York*, 173 A.D.3d 105, 108 (2019).

The Public Employment Relations Board (PERB) is a government agency of the State of New York. It was originally created under the Public Employees Fair Employment Act of 1967 to administer the collective bargaining rights of public employees. N.Y. Civ. Serv. Law §§ 200–215. In July 2010, PERB was tasked with the additional oversight of SERA.[7] Prior to September 5, 2025, Sections 701 and 715 of SERA dictated that PERB's jurisdiction over private sector employers and employees extended only to those not covered by the NLRA, which includes

---

[6] "Regional Elections Decisions," National Labor Relations Board, https://www.nlrb.gov/cases-decisions/decisions/regional-election-decisions (last visited Sept. 30, 2025).

[7] Public Employment Relations Board, Office of Private Employment Practices and Representation, https://perb.ny.gov/office-private-employment-practices-and-representation.

agricultural workers and certain small businesses that do not meet the NLRA's interstate commerce thresholds required for jurisdiction, and to carriers and employees covered by the Railway Labor Act (45 U.S.C. §§ 151 *et seq.*). N.Y. Lab. Law §§ 701, 715.

On September 5, 2025, New York Governor Kathy Hochul signed New York State Senate Bill S.8034A into law, which amended Section 715 of SERA.[8] N.Y. Lab. Law § 715 (Second Amended Complaint, ECF No. 17, at Exhibit A.) According to the Sponsor Memo, S.8034A's purpose is "to give New York the power to protect employees if the [NLRB] is not fulfilling its duty," which it suggests occurs when the Board lacks a quorum and therefore assertedly "lacks the power to take meaningful actions, such as issuing decisions in representation and unfair labor practice cases."[9] S.8034A deleted previous language in Section 715(1) which stated that SERA did not apply to those subject to the NLRA. It also added language stating that Section 715 would not apply to "employees where the [NLRB] successfully asserts jurisdiction over any employer, employees, trades, or industries pursuant to an order by the federal district court established under article three of the United States [C]onstitution." *Id.* at § 715(1)(b).[10] It further added a part 2 to Section 715, empowering PERB to certify employees'

---

[8] New York State Senate Bill Tracker, S.8034A, https://www.nysenate.gov/legislation/bills/2025/S8034/amendment/A; Governor Hochul Signs Legislation to Strengthen and Expand Worker and Labor Protections, Press Release, dated Sept. 6, 2025, https://www.governor.ny.gov/news/governor-hochul-signs-legislation-strengthen-and-expand-worker-and-labor-protections (last visited Sept. 30, 2025).

[9] New York State Senate Bill Tracker, S.8034A, https://www.nysenate.gov/legislation/bills/2025/S8034/amendment/A.

[10] During a June 17, 2025, floor debate of S.8034A in the New York State Assembly, Assemblymen Joseph Sempolinski asked the bill's sponsor, Assemblymember Bronson, to clarify the amendment to Section 1 that requires the Board to "successfully assert jurisdiction":

Mr. Sempolinski: Am I correct that … the current law you're sort of assumed to be under NLRB jurisdiction, if everybody sort of agrees, and now you need a concrete court order?

exclusive bargaining representatives based on an application and proof of certification by another state or federal agency. *Id.* at § 715(2). Finally, S.8034A stated that it would take effect immediately.

With the passage of S.8034A, PERB is now empowered to, among other things, oversee representation elections as well as investigate and adjudicate unfair labor practices for nearly all private sector employers, labor organizations, and employees in the State of New York. *Id.* at §§ 705, 706.

### E. Conflict Arises Between PERB and the NLRB Over the Regulation of Labor Relations at Amazon's JFK8 Facility

On September 15, 2025, the Amazon Labor Union - International Brotherhood of Teamsters Local 1 (ALU) filed an unfair labor practice charge with PERB alleging, pursuant to Section 706 of SERA, that Amazon.com Services, LLC (Amazon) violated Section 704(10) at its JFK8 fulfillment center by terminating employee Brima Sylla on August 9, 2025 (Sylla). (Second Am. Cplt., at Exhibit C.) Prior to the PERB charge and Sylla's alleged unlawful termination, on March 10, 2025, the ALU filed a charge with the Board (Case 29-CA-361669, Second Am. Cpt., at Exhibit B) alleging that Amazon unlawfully disciplined employee Brima Sylla (Sylla) in violation of, inter alia, Section 8(a)(1) of the Act. That charge remains pending and is currently being investigated by the Board's regional office. (Cowen Decl. ¶ 12.) To that

---

Mr. Bronson: You need the [NLRB] to successfully assert jurisdiction.

Mr. Sempolinski: Am I correct that this is sort of going from … there needs to be more of an affirmative act to assert jurisdiction under the new statute?

Mr. Bronson: You are correct.

New York State Assembly Floor Debate, June 17, 2025, video available at https://nystateassembly.granicus.com/player/clip/9134?meta_id=261846.

end, on April 29, 2025, Region 29 sent a letter to Amazon requesting evidence to aid the Region's investigation. (Cowen Decl., ¶ 12, Attachment A.) )

## ARGUMENT

### F.  Legal Standard

To obtain a preliminary injunction in the Second Circuit, the moving party must demonstrate: (1) likelihood of success on the merits; (2) the movant will likely suffer irreparable harm in the absence of an injunction; (3) the balance of the hardships favors the movant; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *New York v. United States Dep't of Homeland Sec*., 969 F.3d 42, 58 (2d Cir. 2020). Where the government is a party to the suit, as it is here, the last two factors merge. *Id.* at 58–59.

### G.  The NLRB Is Likely to Prevail in Showing that the NLRA Preempts S.8034A

i.   <u>*Bethlehem Steel* Controls and Precludes the State of New York and PERB From Regulating Conduct that the NLRA Regulates</u>

S.8034A is not the first time the State of New York, through SERA, has attempted to regulate activity preempted by the Act. Almost 80 years ago, the Supreme Court considered the initial iteration of SERA, NYSLRA, when New York first sought to regulate private sector labor relations. *Bethlehem Steel Co. v. New York State Lab. Rels. Bd*., 330 U.S. 767 (1947). There, a group of foremen pursued certification by the New York State Labor Relations Board at a time when the NLRB's policy held that a bargaining unit of foremen was inappropriate. *Id.* at 770. Notwithstanding the federal policy, the state board certified the foremen's bargaining unit. *Id*. In defending its actions before the Supreme Court, the state board claimed that although the principal power to regulate labor relations remains with the federal government, such power was not exclusive, and state power could be exercised pending the assertion of federal power. *Id.* at 771.

First, the Supreme Court recognized that some matters of labor relations not covered by the NLRA could be left to state regulation. Nevertheless, in exercising powers left to a state by a purely federal scheme, state action may not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 773 (internal quotations and citations omitted). The Supreme Court found that New York's action of seeking to certify foreman within bargaining units was invalid in the face of the NLRB's contrary position. *Id.* at 770, 774. The Court explained that both the state and federal statutes sought to regulate the same realm of labor relations and both had set up boards with significant discretionary review to determine matters ostensibly under each board's purview, but with differing standards; the likely result would be diverging policy positions over the same area of regulation. *Id.* at 775. If such a dual-system scheme were allowed to continue, the Court found, "action by one necessarily denies the discretion of the other. The second to act either must follow the first, which would make its action useless and vain, or depart from it, which would produce a mischievous conflict." *Id.* at 776. Accordingly, because Congress delegated authority to the federal board, the NLRA precluded state action. *Id.* at 776–77.

Thirty years later, in 1976, the New York State Labor Relations Board, then under the auspices of the NYSLRA, was again confronted with the issue of NLRA preemption. A group of medical residents and interns petitioned the NLRB for union representation, but the Board determined that those residents and interns were not employees within the meaning the Act because of their status as students, and therefore dismissed the petition. *Committee of Interns*, 566 F.2d at 811. Then, the group petitioned the New York State Labor Relations Board. After the state board declined jurisdiction, *id.,* the group sued the state board in state court, seeking to compel it to accept jurisdiction. *Id.* Although the state court initially held that the state board was

free to accept jurisdiction, it then reversed its ruling after the NLRB issued a decision holding that its unit determinations about hospital house staff, *Kansas City General Hospital*, 225 NLRB 108 (1976)), like the group at issue, preempted the field. *Committee of Interns*, 566 F.2d at 811. The (federal) Board then, as in the instant case, brought suit against the interns and residents and the New York State Labor Board, pursuant to *NLRB v. Nash-Finch Co.*, 404 U.S. 138 (1971). *See Comm. of Interns*, 566 F.2d at 812. The Second Circuit reversed the district court's refusal to grant preliminary injunctive relief, and held that *Bethlehem Steel* controlled. The Second Circuit explained that Congress's delegation to the NLRB of wide powers over national labor policy ousts state jurisdiction. *Id.* at 815. Critically, the Second Circuit explained that to hold otherwise would result "in a number of damaging effects," including "disparity in a labor policy designed to be national in scope." *Id*. at 815–16.

Here, S.8034A again seeks to rehash what was long ago decided, first in 1947 and then reiterated in 1977. It amends the SERA to delete the language in Section 715(1) referring to the NLRA, so that the SERA no longer excludes employees covered by the Act. It goes on to empower PERB to exercise jurisdiction over private sector labor relations, concurrent with the NLRB and therefore likely to create divergent policy positions, which the Supreme Court rejected in *Bethlehem Steel* and the Second Circuit rejected in *Committee of Interns*. It also places PERB jurisdictionally ahead of the NLRB, by permitting PERB to exercise jurisdiction in the first instance and requiring the Board to wrest back its rightful jurisdiction piecemeal by obtaining a federal court order for *each* case, industry, or trade.

In *Bethlehem Steel*, the Supreme Court rejected a similar argument by New York, which asked the Court for a rule permitting it to act until the NLRB acted in the same case, 330 U.S. at 776. The Court explained that a case-by-case rule was not appropriate because the NLRB, as

empowered by the Act, has jurisdiction and "asserted control over labor relations in general." *Id.* Here, S.8034A is much more bold: it is not requesting that New York be permitted to decide private sector labor relations issues that lie within the exclusive jurisdiction of the Board; it has instead declared it will do so until stopped by a federal court in individual court cases.

Accordingly, under *Bethlehem Steel*, S.8034A is preempted by the NLRA and its implementation and enforcement should be enjoined.

ii.    *Garmon* Preemption

In the decades following its decision in *Bethlehem Steel*, the Supreme Court further developed its preemption jurisprudence. Chief among these cases was *San Diego Building Trades Council v. Garmon*, 359 U. S. 236 (1959). There, the Supreme Court held that "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the Act, the States as well as the federal courts *must defer* to the exclusive competence of the [NLRB]." *Id.* at 245 (emphasis added). To do otherwise risks "the danger of state interference with national [labor] policy[.]" *Id.* Later, the Supreme Court explained that under *Garmon*: "States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286 (1986). Indeed, the Court in *Gould* characterized its NLRA preemption holdings as "reasonably settled." *Id.* Just two years ago, the Supreme Court further explained that, "when properly invoked," *Garmon* "tells us not just what law applies (federal law, not state law) but who applies it (the [NLRB], not the state courts or federal district courts)." *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 777 (2023) (quotation omitted).[11]

---

[11] Three exceptions exist to *Garmon* preemption. One allows a court to resolve a claim if the party raising it lacks a "reasonable opportunity" to "invoke the Board's jurisdiction" as to the legal status of the conduct at issue. *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 201

Here, the breadth of coverage that S.8034A purports to confer on PERB falls squarely within the activity that the Act "protects, prohibits, or arguably protects or prohibits." *Gould*, 475 U.S. at 286. Indeed, S.8034A unshackles PERB to make both unfair labor practice and representation decisions concerning private sector employees, employers, and unions, thereby setting the stage for a myriad of potential clashes with federal labor policy. There is no question that the class of cases PERB will decide are cases that fall within the ambit of national labor policy. *See Sears*, 436 U.S. at 188–89 ("decision to pre-empt . . . state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies" of permitting the state court to proceed."). By modifying Section 715 of SERA and deleting the proviso that it does not cover employees or employers otherwise covered by the NLRA, S.8034A defies the will of Congress and places PERB at the forefront of private sector labor relations in the State of New York. Such usurpation directly contravenes congressional intent behind the Act and defies Supreme Court and Second Circuit preemption jurisprudence. *See Sears*, 436 U.S. at 202 ("The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board."); *see also Sheehan v. U.S. Postal Serv.*, 6 F. Supp. 2d 141, 150 (N.D.N.Y. 1997) (plaintiff's duty of fair representation state

---

(1978); *see also Int'l Longshoremen Ass'n v. Davis*, 476 U.S. 380, 393 n.10 (1986). Another applies if the conduct in question is "a merely peripheral concern" of the NLRA. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243 (1959). A third covers situations "where the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction," a court cannot conclude that Congress "deprived the States of the power to act." *Id.* at 244. *Glacier Northwest, Inc.*, 598 U.S. at 777 n.1.

claim could have been brought before Board and was therefore preempted by primary jurisdiction rationale).

      iii.    <u>Obstacle Preemption and the NLRA</u>

In addition to NLRA preemption jurisprudence, the Supremacy Clause will invalidate state law "where Congress has made 'a considered judgment' or 'a deliberate choice' to preclude state regulation when a federal enactment clearly struck a particular balance of interests that would be disturbed or impeded by state regulation." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir. 2020) (quoting *Arizona v. United States*, 567 U.S. 387, 405 (2012)). Such preemption arises when a state law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress," or makes it impossible to comply with both the local and federal law. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also Bethlehem Steel*, 330 U.S. at 773. Thus, "where Congress has determined the appropriate balance, state regulation involving a different method of enforcement may upset that balance and be displaced by federal law even where the state 'attempts to achieve one of the same goals as federal law.'" *In re Volkswagen*, 959 F.3d at 1213 (quoting *Arizona*, 567 U.S. at 406).

Here, for the reasons explained above, New York's attempt to regulate the same labor relations conduct already regulated by the NLRA brings it squarely within the result forbidden by *Bethlehem Steel*. Indeed, S.8034A "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress," within the prohibition of *Hines v. Davidowitz*, and is accordingly invalid. 312 U.S. at 67.

iv.    The Board Has Neither Ceded nor Declined Jurisdiction Over Private Sector Labor Relations in the State of New York in Such a Way as to Permit New York to Supplant the NLRA

Sections 10(a) and 14(c) of the Act contain explicit mechanisms by which the NLRB may cede or decline jurisdiction to state labor authorities. 29 U.S.C. §§ 160(a), 164(c). First, as the Supreme Court has characterized Section 10(a), it is the "exclusive" mechanism for the Board to affirmatively cede jurisdiction over a particular matter to the states. *Guss v. Utah Lab. Rels. Bd.*, 353 U.S. 1, 9 (1957).[12] Indeed, the language of Section 10(a) was added to the Act by Congress in 1947 amendments to address the preemption issues raised in the Supreme Court's *Bethlehem Steel* decision. *Id.* at 9–10. Section 10(a)'s method ensures "that the national labor policy will not be thwarted even in the predominantly local enterprises to which the proviso applies." *Id.* at 10 (quoting *Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am., Div. 998 v. Wisconsin Emp. Rels. Bd.,* 340 U.S. 383, 398 n.23 (1951)).

In reaction to *Guss* and *Garmon*, Congress enacted Section 14(c) of the Act in 1959. *See Eatz v. DME Unit of Loc. Union No. 3 of Int'l Bhd. of Elec. Workers, AFL-CIO*, 973 F.2d 64, 67 (2d Cir. 1992). Section 14(c)(1) provides that the Board may affirmatively decline jurisdiction over a matter when it considers the "effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of [the Board's] jurisdiction." 29 U.S.C. § 164(c)(1); *see, e.g.,*

---

[12] The proviso to Section 10(a) explains that,

the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith.

29 U.S.C. § 160(a).

17

29 C.F.R. § 103.3 ("The Board will not assert its jurisdiction in any proceeding under sections 8, 9, and 10 of the Act involving the horseracing and dogra011g industries."); *Eatz*, 973 F.2d at 69 (individual's suit against union representing employees of horseracing establishment failed to state a federal claim for relief in light of NLRB's declination of jurisdiction over horseracing industry). Thus, Sections 10(a) and 14(c) together demonstrate that there is no reason to assume the Board impliedly cedes or declines jurisdiction, because Sections 10(a) and 14(c) are the "exclusive" means by which the Board may expressly choose to cede or decline jurisdiction. *See Committee of Interns*, 566 F.2d at 813 n.3.

Here, the Board has not ceded jurisdiction under Section 10(a), nor has it declined jurisdiction under 14(c). Indeed, for PERB to lawfully assert jurisdiction under Section 10(a) or 14(c), the Board would have to decline jurisdiction to such a monumental degree as to abdicate the role given to it by Congress. Accordingly, S.8034A's attempt to strong arm New York's attempt to reverse *Bethlehem Steel* must be enjoined.

### H. The Exclusive Regulation of National Labor Policy by the NLRB Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction

To demonstrate irreparable harm, the NLRB must show "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York*, 969 F.3d at 86  (quotation omitted). The standard for a preliminary injunction is that there must be a *threat* of irreparable harm; actual harm need not have occurred. *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010). Notably, imminent, irreparable injury is "the single most important prerequisite for the issuance of a preliminary injunction." *Yang v. Kosinski*, 960 F.3d 119, 128 & n.32 (2d Cir. 2020). And in the preemption context, other circuits have found that harm to the federal scheme is indeed irreparable when faced with competing state laws. *See United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("The

United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state regulation."); *United States v. South Carolina*, 840 F. Supp. 2d 898, 925 (D.S.C. 2011), *modified in part,* 906 F. Supp. 2d 463 (D.S.C. 2012), *aff'd,* 720 F.3d 518 (4th Cir. 2013) (creating independent state regime that conflicts with federal law causes irreparable harm).

The threat of irreparable harm is especially steep because S.8034A purports to convey permanent primary jurisdiction to PERB. S.8034A is not a "trigger law"—i.e., a law that would only be "triggered" upon the occurrence of certain threshold events, such as the lack of a Board quorum. While such a trigger law would be just as preempted, the permanence of the law here makes the harm more imminent, particularly at a time when then Board's quorum may be restored in short order. *See* n.1 and accompanying text.[13] Thus, nothing in S.8034A would mandate that its provisions go dormant once a Board quorum is regained. Instead, S.8034A installs PERB as the permanent and primary adjudicator of labor relations in New York and requires the NLRB to affirmatively assert jurisdiction in each instance by filing suit in federal district court.

As explained above, S.8034A amends SERA and gives PERB jurisdiction over matters covered by the NLRB, thus making obvious the threat of irreparable harm posed by the overlapping policies of the NLRA and SERA. As the D.C. Circuit has stated, "No state or federal official or government entity can alter the delicate balance of bargaining and economic power

---

[13] Both the bill's sponsor and New York's Governor have characterized S.8034A as a trigger law, even though the plain language of the legislation says otherwise. The Sponsor Memo claims that the "bill intends to give New York the power to protect employees if the [NLRB] is not fulfilling its duty," (https://www.nysenate.gov/legislation/bills/2025/S8034/amendment/A), and the Governor's press release (*see* n.8, *supra*) asserts that, "[I]n the absence of a functional National Labor Relations Board under the Trump Administration, the package of bills also includes legislation that seeks to preserve worker rights here in New York." Yet no such limiting language is found in the final bill. Instead, S.8034A says it became effective upon passage, and contains no mechanism of the type implied by the bill's sponsor and the Governor.

that the NLRA establishes, whatever his or its purpose may be." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1337 (D.C. Cir. 1996).

There are both similarities and differences between the NLRA and SERA. SERA Section 704(10) prohibits "any acts … which interfere with, restrain or coerce employees in the exercise of the rights guaranteed by section [703]."[14] N.Y. Lab. Law § 704(10). This is virtually identical to Section 8(a)(1) of the Act, which prohibits employers from, "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the rights guaranteed in section 7."[15] 29 U.S.C. § 158(a). But there are also several significant differences between the NLRA and SERA. For example, SERA does not proscribe unfair labor practices against unions, as does Section 8(b) of the NLRA, *see* 29 U.S.C. § 158(b). Also, SERA does not expressly permit employers to express non-coercive views about unionization, as exists in Section 8(c) of the NLRA, 29 U.S.C. § 158(c). *See Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 67 (2008) (Section 8(c)'s enactment "manifested a congressional intent to encourage free debate on issues dividing labor and management") (quotation omitted). Nor does SERA expressly protect the right to refrain from

---

[14] Section 703 of SERA states:

> Employees shall have the right of self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion of employers[.]

N.Y. Lab. Law § 703.

[15] Section 7 of the Act states:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]

29 U.S.C. § 157.

engaging in protected concerted activity, as does the NLRA in Section 1 of the Act, 29 U.S.C. § 151. Finally, the NLRA spells out the step-by-step process the NLRB must follow to determine and certify bargaining units, 29 U.S.C. § 159, whereas SERA authorizes PERB to certify bargaining representatives automatically, if those representatives were previously certified by another state or federal agency, *see* N.Y. Lab. Law 715(2).

*Bethlehem Steel* made it clear that to have two labor authorities vying for primacy threatens divergent outcomes, thereby creating "mischievous conflict." 330 U.S. at 776; *see also Gould*, 475 U.S. at 285 ("[C]onflict is imminent" whenever "two separate remedies are brought to bear on the same activity") (quoting *Garner*, 346 U. S. at 498–99).

Indeed, the threat of irreparable harm has now been made manifest. The NLRB has previously exercised jurisdiction over labor disputes involving Amazon's JFK8 fulfillment center and the ALU *See, e.g., Amazon.com Services LLC*, 373 NLRB No. 136 (Nov. 13, 2024), *petition for review filed*, No. 24-13819 (11th Cir. Nov. 21, 2024); *Amazon.com Services LLC,* 373 NLRB No. 92 (Aug. 29, 2024). This year, on March 10, 2025, the ALU filed a charge with the Board (NLRB Case No. 29-CA-361669, Second Am. Cplt. Exhibit B), alleging that Amazon unlawfully disciplined JFK8 employee Brima Sylla (Sylla) for engaging in "Idle Time" when he discussed terms and conditions of employment with other employees, in violation of, *inter alia*, Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1). That charge remains pending and is currently being investigated by the Board's Regional Office 29 in Brooklyn, New York. To that end, Region 29 issued a request for evidence letter to Amazon on April 29, 2025, requesting information on Amazon's "Idle Time" policy. (Cowen Decl. Attachment A.)

On September 15, the ALU filed a charge with PERB against Amazon, alleging it violated Section 704(10) (N.Y. Lab. Law § 704(10)) of SERA, by terminating JFK8 employee

Sylla. Although the alleged unlawful termination occurred after ALU's filing with the Board, the

PERB filing references conduct during the time encompassed within the Board charge.

Specifically, it references alleged issues Sylla had with "Idle Time"—an issue that was included

in Region 29's April 29 request-for-evidence letter to Amazon. (Second Am. Cplt. Exhibit C at ¶

16, 21, 25.)

Given the overlapping nature of the ALU's charges with the Board and with PERB, there

is a distinct threat of diverging policies over the same matter. While PERB may well view the

merits of the charge the same way as the Board's Acting General Counsel and prosecute it as

such, the two entities draw on different bodies of jurisprudence and will make their prosecutorial

decisions accordingly, setting the stage for a confusing and divergent two-tier system. *Cf. Gov't*

*Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 389 (E.D.N.Y. 2022) (defendants accused of

insurance fraud brought hundreds of claims against insurer in state court and arbitration panels

that were likely to produce inconsistent results and cause irreparable harm); *New York Bay Cap.,*

*LLC v. Cobalt Holdings, Inc*., 456 F. Supp. 3d 564, 574 (S.D.N.Y. 2020) (possibility of

inconsistent rulings between arbitrators and district court satisfied likely irreparable harm

requirement where there was significant overlap of matters at issue in each venue).

Moreover, under S.8034A, despite the overlapping issues on the ALU's charges, the only

way for the NLRB to assert its jurisdiction over the ALU-Amazon matter in the State of New

York is for the Board to file a lawsuit in federal district court seeking a declaratory judgment that

the case is appropriately under the Board's exclusive jurisdiction. Such a scheme will severely

disrupt federal enforcement and will place a burden on finite resources. *See South Carolina*, 840

F. Supp. 2d at 926 (disrupting federal enforcement and undue strain on finite resources causes

irreparable harm).

Denying preliminary injunctive relief would indeed result in irreparable harm, as S.8034A permits PERB to act upon its pending Amazon charge, and any other charges and petitions which are filed with PERB, instead of the only agency with the exclusive congressional authority to resolve those matters. Because S.8034A places PERB jurisdictionally ahead of the Board, absent an injunction, the newly amended New York law will set up recurring violations of the Supremacy Clause with each new case filed with PERB. The divergence of fora, laws, and adjudicating bodies will result in chaotic and unpredictable labor relations for employees, unions, and employers, defeating the national labor policy Congress envisioned with passage of the NLRA. Moreover, employees, unions, and employers could file charges with the PERB, and upon decision by this Court invalidating S.8034A, could cause such charge filers to lose their rights under the NLRA because Section 10(b) of the Act, 29 U.S.C. § 160(b), prohibits a complaint to issue based on any unfair labor practice that occurred more than six months before the filing of the charge. Thus, the Board would be permanently deprived of the authority to remedy that particular unfair labor practice. Without injunctive relief, New York employees and employers will be trapped in a confusing, forum-shopping miasma and between potentially irreconcilable labor laws.

Accordingly, in the absence of an injunction, the NLRB, as the exclusive body designated by Congress to regulate most private sector labor relations, is likely to suffer irreparable harm.

I. **A Preliminary Injunction is in the Public's Interest and the Harm to New York and PERB Will Be Comparatively Slight as Compared to the Significant Harm to the NLRA and the Board if S.8034A Is Not Preliminarily Enjoined**

It is in the public interest to issue an injunction to prevent violations of the Supremacy Clause. *See United States v. California*, 921 F.3d 865, 893 (9th Cir. 2019). This is because "frustration of federal statutes and prerogatives are not in the public interest." *Alabama*, 691 F.3d

at 1301; *see also N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (explaining that there is no public "interest in the enforcement of an unconstitutional law").

As explained above, New York has no authority to generally regulate private sector labor relations. Congress has implicitly decided that states, in their sovereign capacities, have no interest in the regulation of labor disputes "affecting commerce" outside the narrow strictures of 10(a) and 14(c). As such, New York cannot claim harm from non-enforcement of a law that it lacks authority to enforce.

Moreover, as shown, New York cannot correctly assert that labor laws are not being enforced within its jurisdiction. While the Board lacks a quorum, only a small percentage of Board matters ever require resolution by the five-seat Board. *See* page 7, *supra*. And nearly all of the NLRB's primary functions continue during this period: representation petitions are received and processed, and elections run; ULP charges are being submitted to regional offices and investigated; many ULPs are settled by the parties, with the aid of the regional offices, well before the need for a final Board order; merit determinations and complaints are being issued and ALJ hearings are proceeding; and Section 10(j) injunction petitions are being filed and injunctive relief has been secured. (Cowen Decl., ¶¶ 4-9.) Yet, S.8034A will continue in effect even after the Board regains its quorum. And, should parties miss the NLRA's statutory six-month deadline to file an unfair labor practice charge, they will be permanently harmed.

Should this Court grant injunctive relief, PERB will be able to continue its traditional function of overseeing public labor matters and the NLRB will continue to process unfair labor practice cases and representation proceedings, each without the threat of being undermined by the other. Accordingly, the balance of the harms favors issuing an injunction.

## CONCLUSION

For the foregoing reasons, this Court should issue a preliminary injunction against the State of New York and PERB enjoining the implementation and enforcement of S.8034A.

Respectfully Submitted,

NANCY E. KESSLER PLATT
*Associate General Counsel*
Division of Legal Counsel
Nancy.Platt@nlrb.gov
Application for admission pending

DAWN L. GOLDSTEIN
*Deputy Associate General Counsel*
Division of Legal Counsel
Dawn.Goldstein@nlrb.gov
Application for admission pending

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
Contempt, Compliance, and
    Special Litigation Branch
Kevin.Flanagan@nlrb.gov
Application for admission pending

/s/ Chad A. Wallace
CHAD A. WALLACE
*Trial Attorney*
Chad.Wallace@nlrb.gov
(202) 273-2489
Contempt, Compliance, and
    Special Litigation Branch
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570

Dated this 30th day of September 2025
in Washington, D.C.