1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

NATIONAL LABOR RELATIONS BOARD,

        Plaintiff,

    v.

STATE OF NEW YORK and PUBLIC EMPLOYMENT REVIEW BOARD,

        Defendants.

Civil Action No. 1:25-cv-1283 (GTS/ML)

## DECLARATION OF JEANNE MIRER ISO PROPOSED INTERVENOR ALU-IBT LOCAL 1'S MOTION TO INTERVENE

David O'Brien Suetholz
dsuetholz@teamster.org
Clement Tsao
ctsao@teamster.org
Willie J. Burden
wburden@teamster.org
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 624-68470

Richard Griffin
rgriffin@bredhoff.com
BREDHOFF & KAISER, PLLC
805 15th Street NW Ste. 1000
Washington, DC 20005
Phone: (202) 842-2600

Jeanne Mirer (NY Bar No. 4546677)
jmirer@julienmirer.com
JULIEN MIRER & ASSOCIATES, PLLC
1 Pierrepont Plaza, 12th Floor
Brooklyn, NY 11201
Phone: (212) 231-2235

Julie Gutman Dickinson *(Pro hac vice pending)*
jgd@bushgottlieb.com
Jennifer A. Abruzzo *(Pro hac vice pending)*
jabruzzo@bushgottlieb.com
Luke Taylor
ltaylor@bushgottlieb.com
BUSH GOTTLIEB, ALC
801 N. Brand Blvd., Suite 950
Glendale, CA 91203
Phone: (818) 973-3228

Edward M. Gleason, Jr.
ed@hsglawgroup.com
Pamela M. Newport
pamela@hsglawgroup.com
HERZFELD, SUETHOLZ, GASTEL, LENISKI
AND WALL, PLLC
600 Vine Street | Suite 2720
Cincinnati, OH 45202
Phone: (513) 381-2224

Ian Hayes (NY Bar No. 5265889)
ihayes@hayesdolce.com
HAYES DOLCE LLP
135 Delaware Avenue, Suite 502
Buffalo, NY 14202
Phone: (716) 534-8388

**DECLARATION OF JEANNE MIRER ISO PROPOSED INTERVENOR ALU-IBT LOCAL 1'S MOTION TO INTERVENE**

I, Jeanne Mirer, declare as follows:

1.      I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2.      I am an attorney licensed to practice law in the states of New York, Michigan, and Massachusetts.

3.      I am a partner of the law firm Julien Mirer & Associates PLLC, and I maintain an office at the firm's Brooklyn, New York office. I have practiced employment and labor law since 1972.

4.      In early May 2022, I began to serve as general counsel for the Amazon Labor Union (ALU). In that capacity, I have represented the ALU in administrative proceedings related to numerous NLRB cases, including in 29-RC-288020 and 29-CA-310869. The ALU is now known as ALU-IBT Local 1. *Infra* ¶ 12.

5.      On information and belief, the ALU filed a representation petition with the NLRB on December 22, 2021, seeking to represent employees at the Amazon.com LLC JFK8 Fulfillment Center in Staten Island, NY ("JFK8"). Following the filing of that petition, the ALU and Amazon stipulated to the terms of the NLRB-conducted election which took place at JFK8 over several days in March with the tally on April 1, 2022. The ALU won that election.

6.      On information and belief, on April 2, 2022, the ALU requested to collectively bargain with Amazon on behalf of the JFK8 employees who had designated the ALU as their representative during the election. Amazon did not respond to ALU's request to bargain. To this day, Amazon has refused to bargain with the Union.

7.      Because Amazon failed to bargain at all with ALU—as required by the

NLRA— the ALU filed the unfair labor practice charge in NLRB Case No. 29-CA-310869. The NLRB issued an administrative complaint in that case on July 12, 2023. There are numerous other unfair labor practices on which the Board has gone to complaint relating to changes in policies and disciplines where the company has refused to bargain.

8.    Amazon filed administrative objections following the election, which objections alleged the ALU and Region 29 of the NLRB acted improperly and tainted the election results. An administrative hearing officer overruled those objections—after Amazon had a full and fair opportunity to present evidence during a 24 day-long hearing where I was present, serving as a lead attorney on behalf of ALU.

9.    Amazon then challenged the hearing officer's decision by requesting a review by the Director of NLRB Regional Office 28 ("Regional Director"). Amazon also requested an exception to the NLRB's usual page limit for briefing such reviews. Amazon requested to file a brief up to 100 pages long and the Regional Director approved that request.

10.    After both Amazon and the ALU submitted briefs, the Regional Director upheld the hearing officer's decision and, thereby, upheld the election results. The Regional Director's decision issued on January 11, 2023 certified the union.

11.    Amazon then requested that the NLRB ("The Board") review the Regional Director's decision. While that request was pending, Amazon on two occasions requested that the Regional Director reopen the administrative hearing so that it could introduce additional evidence, even though it acknowledged that evidence had been available during the original hearing. The Regional Director denied that request. In response, Amazon requested the Board review the Regional Director's denial of its request to reopen the hearing record.

12.    On June 3, 2024 the ALU agreed to affiliate with the International

3

Brotherhood of Teamsters (IBT). The affiliation vote to implement this agreement was concluded on June 18, 2024 with almost unanimous support for it from ALU workers at JFK8. Pursuant to this affiliation, the IBT chartered the ALU into a new local union known as Amazon Labor Union No. 1, International Brotherhood of Teamsters ("ALU-IBT Local 1").

13.  Ultimately, on August 29, 2024, the NLRB issued its decision sustaining the Regional Director's rulings and upheld the election results.

14.  On September 5, 2024, Amazon filed suit in the United States District Court for the Western District of Texas to enjoin the NLRB from certifying the ALU-IBT Local 1 as the collective bargaining representative of JFK8 employees, based in part on Amazon's claim that the NLRA unconstitutionally protects NLRB members from removal by the President. *See Amazon.com Servs. LLC v. NLRB*, No. 24-50761, 2025 WL 2476161, at *2 (5th Cir. Aug. 28, 2025),

15.  On or about August 9, 2025, Amazon fired ALU-IBT Local 1 member and prominent union supporter Brima Sylla. On September 15, the Union filed a charge with PERB pursuant to S.8034A alleging that Sylla's termination violates §704(10) of New York's State Employment Relations Act ("SERA"). A true and accurate copy of that charge, which details the allegations, is attached hereto as **Exhibit A.** PERB has stayed processing of this charge pending the outcome of the preliminary injunction motion in the instant lawsuit, *NLRB v. State of New York et al.*, 25-cv-1283-GTS-ML (N.D.N.Y, Complaint filed 9/12/2025). A true and accurate copy of a notice of this stay is attached hereto as **Exhibit B.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this  _3_   day of October, 2025, at Brooklyn, New York.

_____

Jeanne Mirer

4

# EXHIBIT A



| *** **DO NOT WRITE IN THIS BOX** (For Internal Use Only)*** |
|---|
| **Case No.:** |
| **Date Filed:** |

**NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD**
**• Private Sector •**

## *UNFAIR LABOR PRACTICE CHARGE FORM*

**Instructions**:

- If you are unsure whether this form applies to you, please first review the "Guide for Individuals Representing Themselves Under the SERA," which is located on our website <u>here</u>.
- Answer every question completely.
- If more space is required, attach additional sheets, noting the item number(s) in your response.
- File the form by email to <u>sera@perb.ny.gov</u>; by mail to New York State Public Employment Relations Board, P.O. Box 2074, ESP Agency Bldg 2, Floor 18, Albany, NY 12220-0074; or by fax to (518) 457-2664.

**Purpose of this form**: To allege that an employer, employee(s), and/or labor organization has engaged in, and/or is engaging in, unfair labor practices within the meaning of Section 704 and/or 704-b of the New York State Employment Relations Act ("SERA") (<u>Click here to read the SERA</u>).

**The Charging Party** (the party making this charge) is: ■ Employee/Labor Organization  ☐ Individual  ☐ Employer

| **1. Charging Party** | | |
|---|---|---|
| Name & Address (include number, street, city, state, zip code):<br><br>Amazon Labor Union - International Brotherhood of Teamsters (ALU-IBT) Local 1 | Telephone number (include area code):<br><br>848-210-0636 | Email address:<br><br>info@amazonlaborunion.org |

| **2. Charging Party's Attorney or Other Representative, if any**<br>One with whom PERB should communicate about this matter and who will accept service of papers on Charging Party's behalf | | |
|---|---|---|
| Name & Address (include number, street, city, state, zip code):<br><br>Jeanne Ellen Mirer, Esq.<br>300 Cadman Plaza West, 12th Floor<br>Brooklyn, NY 11201 | Telephone number (include area code):<br><br>313-515-2046 | Email address:<br><br>jmirer@julienmirer.com |

| **3. Respondent Employer, Labor/Employee Organization, or Farm Laborer Against Which this Charge is Brought** | | |
|---|---|---|
| Name & Address (include number, street, city, state, zip code):<br><br>Amazon.com LLC JFK8 Fulfillment Center<br>Mohit Mengale, General Manager<br>546 Gulf Ave., Staten Island, NY 10314 | Telephone number (include area code):<br><br>718-494-7201 | Email address:<br><br>unknown |

| **4. Employer's Business** | |
|---|---|
| General nature of Employer's business:<br><br>Sales / logistics | Approximate total number of employees:<br><br>5000 |
| General nature of work performed by employees involved in this charge:<br><br>Logistics, sorting, and related duties | Is Employer an agricultural employer?<br><br>☐ Yes  ■ No |

1

**5. Violations Alleged**:

a. Pursuant to Section 706 of the New York State Employment Relations Act ("SERA"), the Charging Party hereby alleges that the above-named Respondent has engaged in, or is engaging in, an improper practice within the meaning of the following subsections of the SERA:

*Check the subsection(s) allegedly violated; you may check more than one:*

| | | |
|---|---|---|
| ☐ 704(1) | ☐ 704(5) | ☐ 704-b(1) – FLFLPA/Agricultural only |
| ☐ 704(2) | ☐ 704(6) | ☐ 704-b(2)(a) – FLFLPA/Agricultural only |
| ☐ 704(3)(a)(1) | ☐ 704(7) | ☐ 704-b(2)(b) – FLFLPA/Agricultural only |
| ☐ 704(3)(a)(2) | ☐ 704(8) | |
| ☐ 704(3)(b) | ☐ 704(9) | |
| ☐ 704(3)(c) | ☐ 704(9) | |
| ☐ 704(4) | ■ 704(10) | |
| | ☐ 704(11) | |

b. Specify **in detail** the alleged violation(s) – please specify what happened <u>and</u> how it violated the SERA. Include names, dates, times, places, and the particular actions constituting each violation. Please include the titles and work locations of the individuals involved in the alleged unfair labor practice(s).

*Attach additional sheets, if necessary. Failure to supply sufficient factual detail may result in a delay in processing or a dismissal of the charge.* You must label/explain each attached exhibit and document. Your charge may not consist solely of attachments.

> See attached

c. If you are alleging that any employee(s) has been discharged, refused employment, or suffered discrimination in violation of <u>Section 704 and/or 704-b of the SERA</u>, please specify their name(s):

> Brima Sylla

6.  **Jurisdiction of Employers Which Are Not Agricultural Employers[1] –** If the Employer is ***not*** an agricultural employer, please answer the following questions on jurisdiction:

    a.  The National Labor Relations Act (NLRA) is a federal law that applies to most private sector employers. The SERA is a New York State law that applies only where the federal law, the NLRA, does not. PERB has jurisdiction <u>only</u> with respect to the SERA.

        Has the National Labor Relations Board accepted or declined jurisdiction over the Employer?

        ☐ Accepted    ☐ Declined    ☐ Unknown

    b.  If the NLRB has <u>not</u> declined jurisdiction over the Employer,[2] please provide any information you may have concerning the approximate percentage and volume of sales to, and purchases from, points outside New York State:

        SALES to points outside NYS:
        - Approximate value: $ _____
        - Approximate volume of Employer's total sales: _____%

        PURCHASES from points outside NYS:
        - Approximate value: $ _____
        - Approximate volume of Employer's total purchases: _____%

    c.  If there are any other facts concerning interstate commerce and potential jurisdiction of PERB, please provide them here:

        > Jurisdictional requirements have been met due to the recent amendment to NY Labor Law Section 715, under which PERB now has jurisdiction over this matter involving a nationwide employer.

<u>SUPPORTING DECLARATION</u>

I, the undersigned, declare that I am the Charging Party named above, or their Representative, and that I have read the above charge consisting of this and the attached additional page(s), and that I am familiar with the facts alleged therein, which facts I know to be true, except as to those matters alleged on information and belief, which matters I believe to be true. I declare the contents of this charge to be true under penalty of perjury under the laws of the State of New York.

Signature: _____

Name: Jeanne Ellen Mirer

Title: Attorney

Date: 9-15-25

---

[1] Agricultural employers are explicitly under the jurisdiction of the SERA, which was specifically amended to cover agricultural employers and farm laborers under the Farm Laborers' Fair Labor Practices Act ("FLFLPA") and the State Employment Relations Act ("SERA").

[2] If you are unsure of whether the NLRA would apply, before submitting this Unfair Labor Practice Charge Form to PERB, you are strongly encouraged to seek guidance from the NLRB or research its jurisdictional standards, which are discussed on its website.

## <u>Attachment to ULP Charge – Section 5</u>

The Company has violated Section 704 of SERA as follows:

1.  Brima Sylla was employed at Amazon.com LLC JFK8 Fulfillment Center's ("Amazon" or "Company") JFK8 facility ("the facility") as a Stower, starting in or around 2019 until 2020, then starting again in or around 2021 until on or about August 9, 2025.

2.  As a Stower, Sylla worked in the Stow department at the facility, where he was responsible for scanning products before they were moved to certain locations within the facility. During 2025, he was on a flex schedule, which does not require him to work a 40-hour week.

3.  Throughout the campaign to organize a union at the facility, Sylla was actively involved in various aspects of organizing.

4.  During the union representation election at the facility in late March 2022, Sylla acted an Observer for the Union.

5.  Sylla was elected Vice President of Charging Party Amazon Labor Union – International Brotherhood of Teamsters (ALU-IBT) Local 1 ("Union") in or around July 31, 2024, and maintains that position to date. He was the last Union executive board member working in that facility because the others were terminated.

6.  In December 2024, employees represented by the Union held a strike at the facility. Sylla was a leader in executing the strike, and a group of employees he was responsible for leading were the first to walk out of the facility on strike.

7.  Starting before 2025 and continuing until his unlawful discharge, Sylla regularly brought Union flyers to the facility and distributed them throughout the facility. Sylla as the only executive of the Union working in the warehouse also left flyers in a plastic box in the breakrooms at the facility with the union marking for workers to pick up during break times.

8.  Through such activity and related activity, Sylla has become a prominent Union supporter within the facility, and is known throughout the facility and publicly as a leader in the Union.

9.  Starting after the December 2024 strike and continuing, Sylla noticed the Union flyers he had posted and placed in non-work areas of the facility had been removed on a frequent basis. Sylla complained about the removal of the flyers to Amazon representatives on a regular basis. Including the General Manager.

10. At various points in 2025, Sylla spoke with Amazon representatives Ariana Loca (Senior Operations Manager), Lee (LNU) (HR Manager), Jack (LNU) (Manager), and Mohit Mangale (General Manager) about the flyers being removed.

11. Upon information and belief, Amazon and/or its agents removed the Union flyers Sylla had posted and placed in non-work areas of the facility and Sylla had conversations with management representatives as to where the flyers were taken.

12. Sylla visited Amazon's Human Resources department in 2025 and met with other managers as well – most often to complain about Union flyers being removed and he was the only one to do so. Whenever he went to HR, he usually had to wait on a line of employees for an extended period of time to speak with a Company representative. However, Amazon only recorded each visit using the time he actively met with a representative (a matter of minutes), but excluded the time he spent waiting on line. The time he spent waiting in line to address Amazon's improper removal of union literature was recorded as if it were work time during which Sylla did not perform any work activities, thus negatively affecting his recorded productivity.

13. Whenever possible, Sylla attempted to make visits to Human Resources during his break times. However, given the length of time he had to wait, often his break ended and work time began while he was still on line to meet with an Amazon representative.

14. His other 2025 visits to HR included trying to address time and schedule issues and regularly accompanying bargaining-unit employees when those employees were required to meet with representatives of Amazon, for the purpose of acting as the employees' Union representative, and to provide translation so that management could address their concerns, as he is fluent in Arabic and French. When accompanying employees to these meetings, Sylla wore a jacket with the Union logo and name.

15. During these times, Amazon representatives prohibited Sylla from accompanying employees to meetings in such a capacity. When doing so, Amazon representatives told Sylla words to the effect that Amazon did not recognize his right to accompany co-workers as a Union representative, that the Union was a third party, and that Amazon did not recognize the Union as employees' collective bargaining representative. Sylla had such conversations with Amazon Managers Adam Nelson, Ariana Loca, Aaron Parsons, and other Company representatives.

16. When Sylla had meetings with Amazon representatives in Human Resources and with other managers, as described above, he asked the Company representatives present to make sure his time was recoded, so that it did not appear as idle or unproductive time in his record.

17. Before December 2024, Amazon representatives often scanned Sylla's identification badge during meetings with Human Resources, for the purpose of coding his time in the meeting correctly. After the December 2024 strike, Amazon representatives stopped scanning his badge or decreased the frequency with which they scanned his badge during such meetings. Instead, they told him to just advise his direct managers about his time in HR.

18. On or about August 9, 2025, Amazon terminated Sylla's employment. Amazon cited productivity as the grounds for termination. *See* termination notice dated August 9, 2025, attached hereto as **Attachment A**.

19. In addition to the above coding issues, Sylla was also subject to the below, which also affected his time records, all of which he addressed with management without success.

20. As part of Sylla's duties in the Stow department, employees brought him pallets of merchandise for him to scan. Upon information and belief, it is those employees' duty to open boxes on the pallets, which Sylla was then responsible for scanning before the items were moved elsewhere in the facility. However, the employees bringing him the pallets regularly failed to open the boxes, necessitating Sylla opening them. Because of these circumstances, Sylla could not perform his scanning duties at a desired pace, and thus his productivity was recorded as lower than it would have been if the employees bringing him the pallets performed their duties by opening the boxes.

21. Similarly, since machines regularly broke down without immediate repair, when Sylla's machine broke down, an Amazon representative directed him to move to a different, more distant work station. On multiple occasions, Sylla went to these other work stations only to find another employee already occupied them, necessitating him walking back to his original location. On some occasions, this happened with multiple directives to go to other work stations. All of this time travelling between work stations was recorded as idle or unproductive time within Amazon's system, thus negatively affecting Sylla's recorded productivity in 2025.

22. Each time his work station broke down, including when he had to walk between work stations, Sylla asked Amazon representatives to make sure his time was coded properly, so it did not affect his productivity.

23. Sylla also had a medical accommodation that allowed him to use the bathroom at the facility every two (2) hours, which he often did.

24. Despite granting Sylla's medical accommodation, Amazon counted the time he used the bathroom against him when calculating his productivity in 2025.

25. Starting in or around January 2025 and continuing until his termination, representatives of Amazon approached Sylla with increasing frequency and asked him what he had been doing during specific periods of work time. The representatives said the Company's system marked these periods as showing Sylla being idle or having low productivity. Sylla explained he was engaging in the activities described in the paragraphs above, and asked the Amazon representatives to make sure the coding for those time periods was corrected to reflect those activities. However, even when he raised these issues with the Company representatives, coding mistakes either remained in his record, or the mistakes were only partially addressed.

26. At various points in 2025, Sylla spoke with Amazon representatives Adam Nelson, Ariana Loca, Lee (LNU), Jack (LNU), and Mohit Mengale about the need to recode his time.

27. Employees are not able to correct such coding errors themselves, and must ask an Amazon representative to correct them.

28. While Sylla did not have a way to see if Amazon representatives correctly recoded his time when he asked them to, indications he received upon receiving discipline showed that the representatives did not correctly recode his time despite his valid requests and explanations.

29. Despite Sylla's numerous requests to have time coded properly or recoded to account for the activities described above, Amazon issued him a series of disciplines for low productivity, starting in early 2025. Amazon issued him: two Documented Coachings; a First Written Warning dated April 9, 2025 (attached hereto as **Attachment B**); a Second Written Warning dated May 21, 2025 (attached hereto as **Attachment C**); and a Final Written Warning dated June 15, 2025 (attached hereto as **Attachment D**).

30. By the above conduct, Amazon representatives and agents intentionally and negligently created issues detrimentally affecting his recorded productivity.

31. By the above conduct, Amazon representatives and agents deliberately and artificially lowered Sylla's recorded productivity.

32. Amazon calculated his productivity as described above and lowered Sylla's recorded productivity in order to artificially create reasons to discipline and ultimately discharge him.

33. Amazon lowered Sylla's recorded productivity, issued the disciplines described above, and terminated his employment in retaliation for, and because of Sylla's various activities with and in support of the Union, particularly his leadership in the December 2024 strike and his regular complaints in 2025 about Union flyers being removed from the workplace.

4

34. This termination is just the latest example of Amazon's efforts to squelch union activities and support at JFK8. Prior to the time period at issue here, Amazon has engaged in an extensive and longstanding anti-union campaign at the facility. Specifically, Amazon has fought unionization at JFK8 from before the time the union won the election in April 2022 to continues to do so to date, including but not limited to unlawfully firing employees and appealing the Union's certification at the National Labor Relations Board and in the courts. And, over the past year, it has been challenging the very constitutionality of the National Labor Relations Board's structure to avoid being held accountable for its actions and obligations.

35. When Sylla was informed he was being terminated, an Amazon representative told him it was triggered by some aspect of his performance on July 29. He asked Amazon for documentation of this alleged performance, but Amazon never gave him such documentation.

36. He appealed his termination and was advised on around the same date that his appeal was denied.

37. He filed a complaint with Amazon's Ethics Department over his termination, which is still pending.

# ATTACHMENT A

# Termination Letter
PDF reader



08/09/2025

Brima Sylla
185 Saint Marks Place Apt 4H
Staten Island, NY 10301

Dear Brima (EEID: 105205622):

This letter confirms that the date of involuntary termination of your employment with Amazon.com Services LLC is 08/08/2025.

You have executed a Confidentiality and Invention Assignment Agreement with the Company. You are reminded that certain provisions of the agreement survive the termination of your employment with the Company and remain in full force and effect. Your agreement is available for review and download in the EDM portal for 90 calendar days after the end of your employment.

We wish you the best in your future endeavors.

Sincerely,
Amazon Human Resources

1/1

## Add to note

# ATTACHMENT B

ADAPT

Refused to sign by associate on April 11, 2025, 8:03:56 PM - Delivered by Pipeline hat sipihi)

https://adapt-iad.amazon.com/#/feedback/document/4578423/2032...

## Supportive Feedback Document
### Productivity - First Written

amazon.com

Associate Name: sylla,brima (syllbrima)
Manager Name: Nelson,Adam (FLEXPT)
Created On: April 11, 2025, 8:03:56 PM
Active Days: 60

## Summary

Your recent job performance is not meeting Productivity expectations. Meeting performance standards is a critical component of your job. This document provides specific details about your performance and how you are not meeting expectation. In addition, this document describes the steps you and your manager will take to assist you in improving your performance. As a part of this conversation we are interested in understanding what barriers you are need to be removed, or what improvements can be made which would potentially assist you in improving your performance.

## Communication History

The following is a summary of your productivity feedback.

| Level | Count | Most Recent |
|---|---|---|
| Documented Coaching | 2 | March 26, 2025 |

## Details of Current Incident/Specific Concerns

| Process | Function | | LC | Hours | Units | UPH |
|---|---|---|---|---|---|---|
| Each Transfer In | 4300034958 Nikestow Each Small | | N/a | 9.48 | 2524 | 2661 |
| Stow to Prime | 4300034958 Nikestow Each Small | | N/a | 0.63 | 125 | 198.87 |
| Each Transfer In | 4300034958 Nikestow Each Medium | | N/a | 22.15 | 2031 | 91.65 |
| Stow to Prime | 4300034958 Nikestow Each Medium | | N/a | 4.71 | 291 | 61.7 |

## Performance Trend

Below is a summary of your past productivity performance.

| Period Start | Period End | Units Processed | Hours Worked | UPH | % to Peers | Exempt |
|---|---|---|---|---|---|---|
| March 26, 2025, 5:00:00 AM | April 09, 2025, 5:00:00 AM | 4971 | 36.99 | 134.36 | 97.45331069608927 | N |
| March 19, 2025, 5:00:00 AM | April 02, 2025, 5:00:00 AM | 5224 | 40.59 | 128.35 | 98.42388618074573 | N |
| March 12, 2025, 5:00:00 AM | March 26, 2025, 5:00:00 AM | 5758 | 41.6 | 138.38 | 96.78978253985551 | N |
| March 05, 2025, 5:00:00 AM | March 19, 2025, 5:00:00 AM | 4326 | 29.54 | 146.44 | 92.81657200733945 | N |
| February 26, 2025, 5:00:00 AM | March 12, 2025, 5:00:00 AM | 0 | 0.0 | 0.0 | | Y |

## Areas of Improvement Required by Associate

We are committed to helping you improve your overall productivity performance and will assist in addressing any job related barriers impacting your totally to meet expectations based on your willingness to improve. Currently you aren't meeting expectations per the Quality and Productivity Performance Policy. If performance continues to not meet expectation, further corrective action and/or termination may occur. In addition, if an associate receives a total of 6 written warnings in a rolling 12 months, their employment will end. Please reach out to your manager for additional training or resources.

## Associate Comments

I went to lost and prevention if not I go to the office, if they're not there I go to what do you call it, the cleaner, ABM. To the main person there and they tell me I have to wait. I spoke with Mohit before he said if the box is on the table uhm, if its not property of amazon they take it and put it somewhere, they usually tell me to go look for it. Lee tells me to look for it at lost and prevent, and they tell me to go to security and sometimes I find it, if this thing is disappearing its not right its property of the union. its not lost its written ALU. I don't think Amazon should be touching these things. normally they bring to security or sometimes lost and prevention or ABM. if I don't look for it I would never find it and nobody would read the literature. its not a scandal. to security I would never find it with Adam today. when the worker was killed by the truck I went there how to make sure the working conditions is improved and I spoke about it. if it kills your neighbor you might be next. If it kills your neighbor you might be next. yesterday about that fact we should go home because its a trauma whether its related or not you might be next. I'm very concerned there's something calling I'm giving an example we go there to let them know and okay we excuse your time, sometimes we go and I'm very concerned there's something just to duly policy and I always make sure we respect that. so sometimes when I go on my break I look for my stuff at the breakroom. so the thing is just to and normally I ask the security people I see then when coming from my break. I ask them.

Associate Signature: sylla,brima REFUSED TO SIGN

Date: April 11, 2025, 8:03:56 PM

1 of 3

# ATTACHMENT C



ADAPT

Refused to sign by associate on May 29, 2025, 1:31:51 AM - Delivered by Samad,Abdus (samadabu)

https://adapt-iad.amazon.com/#/feedback/document/18120562/287...

## Supportive Feedback Document
### Productivity - Second Written

amazon.com

**Associate Name:** sylla,brima (syllbrima)
**Manager Name:** Nelson,Adam (FLEXPT)
**Created On:** May 29, 2025, 1:31:51 AM
**Active Days:** 60

## Summary

Your recent job performance is not meeting Productivity expectations. Meeting performance standards is a critical component of your job. This document provides specific details about your performance and how you are not meeting expectations. In addition, this document describes the steps you and your manager will take to assist you in improving your performance. As a part of this conversation we are interested in understanding what barriers you think need to be removed, or what improvements can be made which would potentially assist you in improving your performance.

## Communication History

The following is a summary of your productivity feedback:

| Level | Count | Most Recent |
|---|---|---|
| Documented Coaching | 2 | March 26, 2025 |
| First Written | 1 | April 09, 2025 |

## Details of Current Incident/Specific Concerns

| Process | Function | LC | Hours | Units | UPH |
|---|---|---|---|---|---|
| Stow to Prime | 4300034958 Nikestow Each Small | N/a | 0.08 | 32 | 36112 |
| Stow to Prime | 4300034958 Nikestow Each Medium | N/a | 0.08 | 8 | 96.64 |
| Each Transfer In | 4300034958 Nikestow Each Medium | N/a | 16.51 | 2089 | 112.6 |
| Each Transfer In | 4300034958 Nikestow Each Small | N/a | 13.6 | 2983 | 219.09 |

## Performance Trend

Below is a summary of your past productivity performance

| Period Start | Period End | Units Processed | Hours Worked | UPH | % to Peers | Exempted |
|---|---|---|---|---|---|---|
| May 14, 2025, 5:00:00 AM | May 28, 2025, 5:00:00 AM | 5242 | 29.27 | 179.03 | 90.7928388746603 | N |
| May 07, 2025, 5:00:00 AM | May 21, 2025, 5:00:00 AM | 5112 | 32.3 | 158.23 | 97.5592747559274 | N |
| April 30, 2025, 5:00:00 AM | May 14, 2025, 5:00:00 AM | 3840 | 24.34 | 157.72 | 94.4581154954407 | N |
| April 23, 2025, 5:00:00 AM | May 07, 2025, 5:00:00 AM | 0 | 0.0 | 0.0 | - | Y |
| April 16, 2025, 5:00:00 AM | April 30, 2025, 5:00:00 AM | 0 | 0.0 | 0.0 | - | Y |
| April 09, 2025, 5:00:00 AM | April 23, 2025, 5:00:00 AM | 0 | 0.0 | 0.0 | - | Y |

## Areas of Improvement Required by Associate

We are committed to helping you improve your overall productivity performance and will assist in addressing any job related barriers impacting your ability to meet expectations based on your willingness to improve. Currently, you aren't meeting expectations per the Quality and Productivity Performance Policy. If performance continues to not meet expectation, further corrective action and/or termination may occur. In addition, if an associate receives a total of 6 written warnings in a rolling 12 months, their employment will end. Please reach out to your manager for additional training or resources.

## Associate Comments

AA stated the first productivity write-up they received was not delivered to them. AA stated they spoke to jmorado, ovadi and ahjbe about their first written which they told him was going to be review. AA stated no one came to tell him what the outcome of the review was. AA stated they don't agree with the feedback, because their time was not taken into account when they were with PXT and senior team. AA also stated they sometimes have to go to the restroom after their break because of their accommodation which they felt was not accounted for in their time.

1 of 3

6/16/2025, 1:42 A

# ATTACHMENT D



https://adapt-iad.amazon.com/#/feedback/documents/105205622/202...

ADAPT

### Supportive Feedback Document
### Productivity - Final Written

amazon.com

Associate Name: sylla brima (sylbrima)
Manager Name: Nelson Adan (FLEXPT)
Created On: June 15, 2025, 12:44:35 AM
Active Days: 90

## Summary

Your recent job performance is not meeting Productivity expectations. Meeting performance standards is a critical component of your job. This document provides specific details about your performance and how you are not meeting expectations. In addition, this document describes the steps you and your manager will take to assist you in improving your performance. As a part of this conversation, we are interested in understanding what barriers you think need to be removed, or what improvements can be made which would potentially assist you in improving your performance.

## Communication History

The following is a summary of your productivity feedback:

| Level | Count | Most Recent |
|---|---|---|
| First Written | 1 | April 09, 2025 |
| Documented Coaching | 2 | March 26, 2025 |
| Second Written | 1 | May 21, 2025 |

## Details of Current Incident/Specific Concerns

| Process | Function | LC | Hours | Units | UPH |
|---|---|---|---|---|---|
| Stow to Prime | 4300034958 Nikestow Each Small | N/a | 0.69 | 137 | 198.31 |
| Each Transfer | 4300034958 Nikestow Each Small | N/a | 12.02 | 2807 | 233.5 |
| Each Transfer | 4300034958 Nikestow Each Large | N/a | 0.26 | 22 | 81.56 |
| Each Transfer | 4300034958 Nikestow Each Medium | N/a | 20.4 | 2335 | 114.4 |
| Stow to Prime | 4300034958 Nikestow Each Medium | N/a | 1.72 | 113 | 65.39 |

## Performance Trend

Below is a summary of your past productivity performance.

| Period Start | Period End | Units Processed | Hours Worked | UPH | % to Peers | Exempted |
|---|---|---|---|---|---|---|
| May 28, 2025, 5:00:00 AM | June 11, 2025, 5:00:00 AM | 5414 | 35.11 | 154.16 | 97.0507867036011 | N |
| May 21, 2025, 5:00:00 AM | June 04, 2025, 5:00:00 AM | 6470 | 38.51 | 167.99 | 93.1955824723904 | N |
| May 14, 2025, 5:00:00 AM | May 28, 2025, 5:00:00 AM | 5242 | 29.27 | 179.03 | 90.7925387466031 | N |
| May 07, 2025, 5:00:00 AM | May 21, 2025, 5:00:00 AM | 5112 | 32.3 | 158.23 | 97.5592747592748 | N |
| April 30, 2025, 5:00:00 AM | May 14, 2025, 5:00:00 AM | 3840 | 24.34 | 157.72 | 94.4581715465940 | N |
| April 23, 2025, 5:00:00 AM | May 07, 2025, 5:00:00 AM | 0 | 0.0 | 0.0 | | Y |

## Areas of Improvement Required by Associate

We are committed to helping you improve your overall productivity performance and will assist in addressing any job related barriers impacting your ability to meet expectations based on your willingness to improve. Currently, you aren't meeting expectations per the Quality and Productivity Performance Policy. If performance continues to not meet expectation, further corrective action and/or termination may occur. In addition, if an associate receives a total of 6 written warnings in a rolling 12 months, their employment will end. Please reach out to your manager for additional training or resources.

## Associate Comments

I acknowledge that I have been informed of my right to appeal this feedback if I meet all eligibility requirements defined by the Appeals Policy, and that I know where to obtain an appeals packet.

Spoke to AA on 6.14.2025 regarding their productivity feedback. During the conversation, AA expressed that they do not believe their performance is accurately reflected by their slow performance alone. They feel TLI negatively impacts their overall metrics—particularly when they step away from their station to escalate concerns, and that time is not properly coded. AM reviewed the AA's two-week productivity data in detail, but AA disagreed with the assessment. AA was informed of their right to appeal and stated they plan to follow up with PXT and Senior Ops regarding their concerns.

1 of 3

6/16/2025, 1:47 AM

# EXHIBIT B



**STATE OF NEW YORK**
**PUBLIC EMPLOYMENT RELATIONS BOARD**

The Electric Tower
535 Washington Street, Suite 302
Buffalo, NY 14203-1415
TEL: (716) 847-3449
FAX: (716) 847-3690
www.perb.ny.gov

**TIMOTHY CONNICK**
Chairperson

**JOSEPH E. O'DONNELL**
Director
Private Employment Practices
and Representation

October 1, 2025

**VIA ELECTRONIC MAIL**

Ian Hayes, Esq.
Hayes Dolce
ihayes@hayesdolce.com

James La Rocca, Esq.
Hunton Andrews Kurth LLP
jlarocca@hunton.com

**RE: Case No. UP-40005 – AMAZON.COM LLC JFK8 FULFILLMENT CENTER**

Dear Representatives:

Be advised that PERB will hold this matter in abeyance pending the outcome of the preliminary injunction motion in *National Labor Relations Board v State of New York, et al.*, 1:25-cv-1283-GTS-ML currently pending in the United States District Court for the Northern District of New York.

As a consequence, the WebEx conference previously scheduled for **Monday, October 13, 2025, at 2:00 p.m.** is adjourned, and the Respondent's deadline for filing its Answer to the Charge or Motion for Particularization is stayed until further notice.

Very truly yours,

Joseph E. O'Donnell, Director
Private Employment Practices and Representation

JO/kb
cc: Amazon.com LLC JFK8 Fulfillment Center (VIA USPS)
    Mohit Mengale, General Manager
    546 Gulf Avenue
    Staten Island, NY 10314