UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF NEW YORK and PUBLIC EMPLOYMENT REVIEW BOARD,<br><br>    Defendants. | Civil Action No. 1:25-cv-1283 (GTS/ML) |

## MEMORANDUM OF LAW OF PROPOSED INTERVENOR AMAZON LABOR UNION NO. 1, INTERNATIONAL BROTHERHOOD OF TEAMSTERS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

David O'Brien Suetholz
dsuetholz@teamster.org
Clement Tsao
ctsao@teamster.org
Willie J. Burden
wburden@teamster.org
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 624-6847

Richard Griffin
rgriffin@bredhoff.com
BREDHOFF & KAISER, PLLC
805 15th Street NW Ste. 1000
Washington, DC 20005
Phone: (202) 842-2600

Jeanne Mirer (NY Bar No. 4546677)
jmirer@julienmirer.com
JULIEN MIRER & ASSOCIATES, PLLC
1 Pierrepont Plaza, 12th Floor
Brooklyn, NY 11201
Phone: (212) 231-2235

Julie Gutman Dickinson *(Pro hac vice)*
jgd@bushgottlieb.com
Jennifer A. Abruzzo *(Pro hac vice pending)*
jabruzzo@bushgottlieb.com
Luke Taylor
ltaylor@bushgottlieb.com
BUSH GOTTLIEB, ALC
801 N. Brand Blvd., Suite 950
Glendale, CA 91203
Phone: (818) 973-3228

Edward M. Gleason, Jr.
ed@hsglawgroup.com
Pamela M. Newport
pamela@hsglawgroup.com
HERZFELD, SUETHOLZ, GASTEL, LENISKI
AND WALL, PLLC
600 Vine Street | Suite 2720
Cincinnati, OH 45202
Phone: (513) 381-2224

Ian Hayes (NY Bar No. 5265889)
ihayes@hayesdolce.com
HAYES DOLCE LLP
135 Delaware Avenue, Suite 502
Buffalo, NY 14202
Phone: (716) 534-8388

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ....................................................................................................................1

BACKGROUND .....................................................................................................................3

I.      Plaintiff's Lawsuit Challenging the Amendment to SERA § 715 ...................................3

II.     The NRLB's loss of quorum and independence. ............................................................3

III.    The NLRB's dysfunction and futility. ..........................................................................4

ARGUMENT ..........................................................................................................................6

I.      Plaintiff will not likely establish the Amendment is facially preempted. ..........................6

    A.     The Amendment is not *Garmon* preempted. ........................................................6

         1.     *Garmon* does not control. .........................................................................7

             (a)    Lost independence negates *Garmon*'s applicability. ......................8

             (b)    The Board's dysfunction negates *Garmon*'s applicability............11

                  (i)     The Board no longer protects collective bargaining. .........11

                  (ii)    Lost quorums paralyze the Board. ....................................12

         2.     *Garmon* improperly interpreted the NLRA. ...............................................15

    B.     *Bethlehem Steel* and *Committee of Interns* do not control. ...................................16

    C.     The Amendment is not obstacle preempted. ........................................................17

    D.     Sections 10(a) and 14(c) are not exclusive bases for state regulation. .................19

    E.     Preemption would contravene the 10th Amendment.............................................21

II.     Plaintiff is not threatened with irreparable harm. ...........................................................22

III.   The balance of hardships and public interest weigh against an injunction........................25

CONCLUSION.....................................................................................................................25

## TABLE OF AUTHORITIES

**Federal Cases**                                                                **Page(s)**

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge,*
    403 U.S. 274 (1971) ...................................................................................14, 20

*Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am., Div. 998 v.*
    *Wisconsin Emp. Rels. Bd.,*
    340 U.S. 383 (1951) ..............................................................................................16

*Amazon.com Services LLC v. New York PERB et al.,*
    25-cv-05311-EK-MMH (E.D.N.Y.) ....................................................17, 22, 23

*Amazon.com Servs. LLC v. NLRB,*
    2025 WL 2476161 (5th Cir. Aug. 28, 2025)............................................................5

*Ass'n To Pres. & Protect Loc. Livelihoods v. Sidman,*
    147 F.4th 40 (1st Cir. 2025)..................................................................................22

*Bethlehem Steel Co. v. State Labbor Relations Board*
    330 U.S. 767 (1947)..............................................................................................16

*Boire v. Greyhound Corp.,*
    376 U.S. 473 (1964) .............................................................................................13

*Brown v. Pro Football,*
    518 U.S. 231 (1996)......................................................................................1, 11, 25

*California v. ARC Am. Corp,*
    490 U.S. 93 (1989) ...............................................................................................18

*Caudill v. Lancaster Bingo Co.,*
    2005 WL 2738930 (S.D. Ohio Oct. 24, 2005).....................................................18

*Cent. Bank of Denver v. First Interstate Bank of Denver,*
    511 U.S. 164 (1994)..............................................................................................21

*Chamber of Commerce of U.S. v. Reich,*
    74 F.3d 1322 (D.C. Cir. 1996)..............................................................................22

*Chan v. United States Dep't of Transportation,*
    2024 WL 5199945 (S.D.N.Y. Dec. 23, 2024) .....................................................23

*Cipollone v. Liggett Grp., Inc.,*
    505 U.S. 504 (1992)................................................................................................8

*Community Housing Improvement Program v. City of New York,*
    59 F.4th 540 (2d Cir. 2023) ....................................................................................6

*Glacier Nw. v. Int'l Bhd. of Teamsters Loc. Union No. 174,*
    598 U.S. 771 (2023) .......................................................................................2, 14, 15, 20

*Gov't Emps. Ins. Co. v. Strutsovskiy,*
    2017 WL 4837584 (W.D.N.Y. Oct. 26, 2017) .......................................................24

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ...............................................................................................15

*Guss v. Utah Labor Relations Board*
    353 U.S. 1 (1957) ...................................................................................................20

*Harris v. Bessent,*
    2025 WL 980278 (D.C. Cir. Mar. 28, 2025) ...........................................................3

*Harrison Steel Castings Co. v. NLRB,*
    923 F.2d 542 (7th Cir. 1991) ..................................................................................12

*Heckler v. Chaney,*
    470 U.S. 821 (1985).................................................................................................10

*Hemmings v. Tidyman's Inc.,*
    285 F.3d 1174 (9th Cir. 2002) ................................................................................18

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935)...............................................................................................3, 9

*Linn v. United Plant Guard Workers of Am., Loc. 114,*
    383 U.S. 53 (1966)...................................................................................................17

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024).................................................................................................10

*Madeira v. Affordable Hous. Found.,*
    469 F.3d 219 (2d Cir. 2006).....................................................................................18

*Massachusetts v. EPA,*
    549 U.S. 497 (2007).................................................................................................11

*McLamb v. NLRB,*
    141 F.4th 1308 (D.C. Cir. 2025).............................................................................10

*Metro. Life Ins. Co. v. Massachusetts,*
    471 U.S. 724 (1985)...................................................................................................6

*Metro. Taxicab Bd. of Trade v. City of New York,*
    615 F.3d 152 (2d Cir. 2010).......................................................................................6

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
    584 U.S. 453 (2018) ................................................................................21

*Nat'l Ass'n of Immigr. Judges v. Owen*
    139 F.4th 293 (4th Cir. 2025) ...............................................7, 8, 10, 11

*NLRB v. Committee of Interns and Residents*
    566 F.2d 810 (1977) ..........................................................................17, 20

*NLRB v. Gissel Packing Co.,*
    395 U.S. 575 (1969) ................................................................................23

*NLRB v. J. Weingarten,*
    420 U.S. 251 (1975) ............................................................................1, 11

*N.Y. Bay Capital, LLC v. Cobalt Holdings, Inc.,*
    456 F. Supp. 3d 564 (S.D.N.Y. 2020) ..................................................24

*New Process Steel v. NLRB,*
    560 U.S. 674 (2010) ..................................................................................3

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ..................................................................................11

*RAV Truck & Trailer Repairs v. NLRB,*
    997 F.3d 314 (D.C. Cir. 2021) ...............................................................12

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon,*
    359 U.S. 236 (1959) ...................................................................... *passim*

*Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters,*
    436 U.S. 180 (1978) .............................................................7, 10, 14, 20

*Silverman v. Whittall & Shon,*
    1986 WL 15735 (S.D.N.Y. June 6, 1986) ......................................10, 12

*Sweeney v. Pence,*
    767 F.3d 654 (7th Cir. 2014) .................................................................17

*Trump v. Slaughter,*
    606 U. S. ___ (2025) ................................................................................3

*Trump v. Wilcox,*
    145 S. Ct. 1415 (2025) .........................................................................3, 10

*UAW-CIO v. Russell,*
    356 U.S. 634 (1958) ..........................................................................17, 20

*United Const. Workers v. Laburnum Const. Corp.*,
   347 U.S. 656 (1954) ..................................................................................11, 17, 20

*United States v. City of New York*,
   2013 WL 12361934 (E.D.N.Y. Jan. 31, 2013) ......................................................23

*Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig*
   959 F.3d 1201 (9th Cir. 2020) ..............................................................................18

*Wiener v. United States*,
   357 U.S. 349 (1958) ................................................................................................9

**State Cases**

*Allen-Bradley Loc. No. 1111, United Elec., Radio & Mach. Workers of Am. v.
   Wisconsin Emp. Rels. Bd.*
   295 N.W. 791 (Wis. 1941) ....................................................................................15

*Wisconsin Lab. Rels. Bd. v. Fred Rueping Leather Co.*
   279 N.W. 673 (Wis. 1938) ..............................................................................15, 16

**Federal Statutes**

Civil Service Reform Act ("CSRA") .........................................................................7, 8

National Labor Relations Act ............................................................................ *passim*

   29 U.S.C. § 160 ............................................................................................12, 13, 19

   29 U.S.C. § 151 ..............................................................................................1, 14, 25

   29 U.S.C. § 153 ......................................................................................................3, 21

   29 U.S.C. § 164(c) ..................................................................................................20

**State Statutes**

Cal. Bus. & Prof. Code § 16600 ...............................................................................18

State Employment Relations Act ........................................................................ *passim*

   N.Y. Lab. Law 715 ...............................................................................................3, 23

   N.Y. Lab. Law § 700 ..............................................................................................25

   N.Y. Lab. Law. § 707 ............................................................................................24

   N.Y. Lab. Law § 714 ................................................................................................6

**Other Authorities**

Celine McNicholas et al., Unlawful Employer Opposition to Union Election
Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019), https://perma.cc/J4V3-
Y9NA ..........................................................................................................................4

H.R. REP. NO. 74-969 (1935) ..........................................................................................9

*Hearing on S. 1958 Before the Senate Comm. on Education and Labor, 74th
Cong.*, 115-16 (1935) (Sen. Wagner)................................................................................9

John Kruzel & Daniel Wiessner, *Frozen feud: How Trump and the Supreme
Court helped put historic Whole Foods union bid on ice* (Reuters, Oct. 1,
2025). .......................................................................................................................13

Matt Bruenig, *NLRB Processing Times Have Dramatically Increased* (Mar. 06,
2024), https://www.nlrbedge.com/p/nlrb-processing-times-have-dramatically; ......................4

NLRB Case No. 29-CA-310869 ...................................................................................4, 5

Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization
Under the NLRA*, 96 HARV. L. REV. 1769, 1769-70 (1983) ....................................4

*Redd-I, Inc.*,
290 NLRB 1115 (1988) ..........................................................................................24

Thomas A. Kochan et al., The Transformation of American Industrial Relations
(1994) ........................................................................................................................11

Trump Administration to direct the NLRB's actions,
*https://myprivateballot.com/wp-content/uploads/2025/04/CDW-letter-to-AG-
Bondi_EO-14215_Apr-2025.pdf* ........................................................................10

## **INTRODUCTION**

Congress enacted the National Labor Relations Act ("NLRA") in 1935 during the Great Depression to address nationwide economic instability flowing from widespread strikes, violence, and other protest activity caused by a lack of sufficient channels for employees to engage with their employers to improve their wages and working conditions. While the NLRA's substantive aims were various—promoting industrial democracy, redistributing wealth, and peacefully resolving labor disputes—Congress envisioned that the route to fulfilling all those goals was "meaningful collective bargaining." *See, e.g.*, *Brown v. Pro Football*, 518 U.S. 231, 237 (1996) (collecting cases); 29 U.S.C. § 151 (NLRA declaration of policy). Safeguarding collective bargaining requires the National Labor Relations Board ("NLRB" or "Board") to *actively* enforce the NLRA. *E.g. infra* pp. 4-5 (detailing Amazon's three-year litigation preventing Board from enforcing its obligation to collectively bargain with Intervenor's members). Congress expected the Board would actively "adapt the [NLRA] to changing patterns of industrial life." *NLRB v. J. Weingarten*, 420 U.S. 251, 266 (1975).

This case involves a New York law (the "Amendment") that allows that state's Public Employment Relations Board ("PERB") to apply New York's State Employment Relations Act ("SERA") to employees covered by the NLRA. The Amendment therefore establishes concurrent state and federal jurisdiction, consistent with the many other regulatory domains (e.g., antitrust and employment law) in which firms and employers face simultaneous coverage by federal and state law. The Amendment recognizes that the premises underlying *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959) ("*Garmon*"), which is an implied preemption doctrine, have today been negated. That doctrine requires a functioning, independent NLRB. The NLRB is no longer either. Not only has it suffered decades-long

1

atrophy, but it has lacked the quorum needed to effect enforceable judgments for over ten months. Furthermore, the Supreme Court has embraced the view that statutory removal protections for Board members under the NLRA can be disregarded by the President, and appears poised to definitively rule that such protections are unenforceable.

Congress would not have intended a dysfunctional agency under the President's thumb to effect a preemption regime that Justices Thomas and Gorsuch recently clocked as "strange[ly] . . . broad". *Glacier Nw. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 785 (2023) (concluding the Court "should carefully reexamine" *Garmon* in "an appropriate case"). Nor is the Amendment facially obstacle preempted. The Amendment in no way bars anyone from bringing charges to the NLRB and seeking the NLRA's protections. It merely permits PERB to advance the same fundamental policies of the NLRA to protect employees' rights to form unions and bargain collectively in New York, consistent with long-standing State public policies. If specific applications of the Amendment prove to conflict with the NLRA, courts can evaluate as-applied challenges in suitable cases. SERA's separability clause permits finding those applications preempted, without invalidating the Amendment.

Plaintiff's other arguments for preemption fail, and Plaintiff does not establish irreparable harm. The public interest and balance of equities countermand an injunction. The NLRA and SERA both embrace public policies of advancing collective bargaining. An injunction would deprive employees, Intervenor, and other unions of a functioning forum to enforce the labor law protections that are a precondition for that advancement.

## BACKGROUND

### I.    Plaintiff's Lawsuit Challenging the Amendment to SERA § 715

New York has amended SERA Section 715 to provide PERB concurrent jurisdiction over employees who are covered by the NLRA. N.Y. Lab. Law § 715(1), as amended by S.8034A (the "Amendment"). PERB will decline jurisdiction over such employees where the NLRB "successfully asserts jurisdiction over any employer, employees, trades, or industries" pursuant to a federal district court order. *Id.* The operative Complaint alleges the Amendment is facially preempted by the NLRA. Dkt. 13-1. Plaintiff has now moved to preliminarily enjoin Defendants from enforcing the Amendment. Dkt. 20 ("Mot.").

### II.    The NRLB's loss of quorum and independence.

The NLRA prohibits the President from removing NLRB members except for cause. *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) (citing 29 U.S.C. §153(a)). On January 27, 2025, President Trump removed Board member Gwynne Wilcox based on his view that these statutory removal protections are unconstitutional. *Harris v. Bessent*, 2025 WL 980278, at *2 (D.C. Cir. Mar. 28, 2025). The Supreme Court agreed they likely are, and accordingly stayed the D.C. Circuit's *en banc* decision enjoining Wilcox's removal. *See Wilcox*, 145 S. Ct. at 1415. The Supreme Court has since granted certiorari before judgment in litigation arising from Trump's similar removal of FTC Commissioner Rebecca Kelly Slaughter, to take up whether the Court should overrule *Humphrey's Executor v. United States*, 295 U. S. 602 (1935). *Trump v. Slaughter*, 606 U. S. ___ (2025). The sum of all this is that the Board currently lacks a quorum and thus cannot issue any decisions, *New Process Steel v. NLRB*, 560 U.S. 674, 676 (2010), plus Board members currently lack the independence that the NLRA envisioned, *infra* I.A.1(a), and the Supreme Court is poised to definitively so rule.

### III.     The NLRB's dysfunction and futility.

Intervenor (the "Union") represents employees of Amazon.com LLC JFK8 Fulfillment Center who work at Amazon's JFK8 facility in Staten Island. Declaration of Jeanne Mirer ISO Motion to Intervene, Dkt. 26-2 ("Mirer Dec."), ¶¶ 5, 10, 12. More than three years after these workers voted in an NLRB election to unionize with the Union's predecessor—the ALU, *id*. ¶ 12—Amazon has still refused to bargain with them, much less reach a collective bargaining agreement. *Id*. ¶¶ 6-7. Instead, Amazon rolled out the now-common employer strategy of willfully violating the NLRA and abusing the NLRB's processes to curry delay and abrade workers' morale, hoping that whatever remedies the NLRB may eventually issue will come too late and be too meager to compensate for or deter these violations.[1]

Specifically, the ALU filed a representation petition with the NLRB on December 22, 2021, to request an election for JFK8 workers to vote on whether to unionize with ALU. Mirer Dec. ¶ 5. The ALU won that election when it finally was held in March and April 2022. *Id*. Given that victory, on April 2, 2022, the ALU requested to collectively bargain with Amazon on behalf of the JFK8 employees who had elected the ALU as their representative. Mirer Dec. ¶ 6. Amazon's refusal to bargain *at all* with the ALU—much less bargain in good faith as required by the NLRA—led the ALU to file an unfair labor practice charge in NLRB Case No. 29-CA-

---

[1] Even before the NLRB lost a quorum, it had become notorious for its increasingly slow processes and weak enforcement capacity. Matt Bruenig, *NLRB Processing Times Have Dramatically Increased* (Mar. 06, 2024), https://www.nlrbedge.com/p/nlrb-processing-times-have-dramatically; Celine McNicholas et al., Unlawful Employer Opposition to Union Election Campaigns, ECON. POL'Y INST. 5 (Dec. 11, 2019), https://perma.cc/J4V3-Y9NA (explaining NLRB now "fails to prevent employers from engaging in aggressive, coercive, and intimidating opposition to workers' efforts to unionize"); Paul C. Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization Under the NLRA*, 96 HARV. L. REV. 1769, 1769-70 (1983) (noting already by 1980s,"[t]he fraction of the work force actually engaged in collective bargaining [wa]s steadily declining" in "[m]ajor" part because NLRB "has proved powerless" to deter or remedy "illegal tactics . . . by employers determined to prevent unionization").

310869 and, ultimately, resulted in the issuance of an administrative complaint by the NLRB against Amazon. Mirer Dec. ¶ 7. The NLRB has also issued administrative complaints alleging that Amazon has committed other unfair labor practices against this workforce, including unlawful discipline of employees. *Id.*

Rather than bargain, Amazon has contested its loss in the 2022 election and has repeatedly used the NLRB's administrative process to challenge the election results. *Id.* ¶¶ 8-11, 13. After an initial twenty-four day hearing, an administrative hearing officer overruled Amazon's objections. *Id.* ¶ 8. Amazon once again challenged that decision by requesting review by the Director of NLRB Regional Office 28 ("Regional Director"), whom Amazon provided a 100-page brief. The Regional Director eventually rejected Amazon's arguments, upheld the election, and, on January 11, 2023 certified the Union. *Id.* ¶¶ 9-10.

Yet Amazon's challenges continued, and not until August 29, 2024 did the NLRB issue a decision affirming the Regional Director's upholding of the election results. *Id.* ¶ 13. But Amazon still refused to respect its workers' choice of union representation and continued to fight it. On September 5, Amazon filed suit in the United States District Court for the Western District of Texas, a forum far from the JFK8 operation in Staten Island, NY, to enjoin the NLRB from certifying the Union as the collective bargaining representative of JFK8 employees, based on Amazon's claim, *inter alia*, that the NLRA unconstitutionally protects NLRB members from removal by the President. *Id.* ¶ 14; *Amazon.com Servs. LLC v. NLRB*, 2025 WL 2476161, at *2 (5th Cir. Aug. 28, 2025). This has resulted in protracted litigation in the district court and Fifth Circuit Court of Appeals. *See generally id.* (canvassing litigation's history).

Continuing its efforts to squelch Union support at JFK8, on or about August 9, 2025, Amazon fired ALU-IBT Local 1 member and prominent union supporter Brima Sylla. Mirer

Dec. ¶ 15. On September 15, the Union filed the Sylla Charge with PERB pursuant to the Amendment, alleging that Sylla's termination violates §704(10) of SERA. *Id*. ¶ 15.

## ARGUMENT

A movant for preliminary injunction usually "must demonstrate 1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor, and 3) that the public's interest weighs in favor of granting an injunction." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010). But where, as here, the injunction "will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Id*.

### I.    Plaintiff will not likely establish the Amendment is facially preempted.

Neither *Garmon* nor Plaintiff's other authorities support finding preemption. Even if this Court concludes certain applications of the Amendment are preempted, they would not support a facial challenge. Given SERA's Separability clause, N.Y. Lab. Law § 714, specific instances of conflict preemption fail to show the Amendment is preempted "in all of its applications". *See Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 548 (2d Cir. 2023).

#### A.    The Amendment is not *Garmon* preempted.

"[T]he NLRA contains no statutory provision indicating the extent to which it was intended to pre-empt state law." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 733 (1985). While the NLRA centralized administration of *the NLRA* in a single agency—the NLRB— *Garmon* recognized that "the statutory implications concerning what has been taken from the States and what has been left to them are of a Delphic nature." *Garmon*, 359 U.S. at 241. Faced

with that silence, the Court ultimately inferred a congressional intent that states not regulate conduct that "is arguably subject to [§] 7 or [§] 8 of the [NLRA]." *Id*. at 245. For such conduct, the Court inferred, states "must defer to the exclusive competence of" the NLRB—a "specially constituted tribunal" that would enforce labor policy through its "specialized knowledge and cumulative experience." *Id*. at 242, 244-45.

The NLRB's inability to regulate and lost independence negate *Garmon*'s own premises, such that *Garmon* does not here control. *Infra* I.A.1. The Union then briefly explains that *Garmon* improperly interpreted the NLRA. *Infra* I.A.2.

### 1.    *Garmon* does not control.

*Garmon* suggested that courts interpreting the NLRA's preemptive scope must ask what Congress would have intended in light of emergent problems that "were not[] foreseen by Congress." 359 U.S. at 239-240. *Garmon*'s own standard thus contemplates that courts will take account of changed circumstances, in order to through "the judicial process. . .  carry[] out with fidelity the purposes of Congress." *Id*. at 239-40. Indeed, the Court has since eschewed "apply[ing] the *Garmon* guidelines in a literal, mechanical fashion," *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978) ("*Sears*").

The Fourth Circuit has shown, in a similar case, what this means when the NLRB has lost its independence and stopped adequately enforcing the NLRA. In *Nat'l Ass'n of Immigr. Judges v. Owen*, that court addressed whether the Civil Service Reform Act ("CSRA"), through which Congress "create[d] a uniform scheme for administrative and judicial review of covered federal employee personnel actions", strips federal district courts of jurisdiction. 139 F.4th 293, 299, 301 (4th Cir. 2025). Longstanding doctrine holds yes, the Court noted. *Id*. at 304-05. Like the NLRA and NLRB, the CSRA created the Merit System Protection Board ("MSPB") as a quasi-judicial,

independent agency to adjudicate such actions. *Id*. at 302. Thus, again analogously, the Supreme

Court interpreted the CSRA's specific, detailed administrative scheme to be exclusive. *Id*. at 299,

304-05. Yet, while "[i]t has been well-established that Congress's intent for the CSRA [was] to

preclude district court jurisdiction[,]" that "conclusion can only be true" when the "statute

functions as Congress intended." *Id*. at 305. The court identified two phenomena that would

cause the statute to cease functioning so. First, the administrative scheme's inability to process

claims "adequately and efficiently." *Id*. at 305 (noting this inability is present if "the Senate-

confirmed roles in the MSPB . . . go unfilled, or if the agencies fail to perform their duties such

that covered employees' claims are not adequately processed"). Second, if the MSPB ceases to

be an independent agency. *Id*. at 305-06. In sum, "Congress intended for the Civil Service

Reform Act to strip district courts of jurisdiction only if federal employees were otherwise able

to receive adequate and independent review of their claims." *Id*. at 299.

While *Owen* was not applying *Garmon*, it was making the same fundamental inquiry the

*Garmon* court had and that this court must in any preemption analysis: What was (or, would

have been) Congress's intent? *Cipollone v. Liggett Grp., Inc*., 505 U.S. 504, 516 (1992). For the

following reasons, Congress would not have intended *Garmon* preemption to apply today.

(a)    Lost independence negates *Garmon*'s applicability.

The Board currently lacks—and will not likely regain— its independence. *Supra* p. 3. Yet

the Board's exclusive jurisdiction is staked on its independence. *Garmon* reasoned that Congress

intended the NLRB would shape labor policy as a "specific and specially constituted tribunal"

that would bring to bear its "specialized knowledge and cumulative experience." 359 U.S. at 242.

The Court did not specify what was special about the NLRB's constitution because that issue

was not before the Court. In fact, it likely took for granted the NLRB's status as an independent

agency since just one year before issuing *Garmon*, the Court had reaffirmed *Humphrey's Executor* in its decision in *Wiener v. United States*, 357 U.S. 349 (1958).

But the NLRB's independence is the key feature of the "special[] constitut[ion]" *Garmon* emphasized. A proposed amendment to place the NLRB under the Department of Labor was defeated after Congressmembers and members of the pre-NLRA Board stressed the necessity of the Board's independence. *E.g.* H.R. REP. NO. 74-969, at 11 (1935) (Board Member Biddle), Declaration of Luke Taylor ("Taylor Dec.") Ex. 1 ("The value and success of any quasi-judicial board dealing with labor relations lies first and foremost in its independence and impartiality . . . Where Congress has defined a policy and created an administrative board to carry out that policy, it has with marked consistency recognized that the board so created should . . . be free of control by the executive departments or by any particular administration"). Senator Wagner himself explained independence was vital to avoid "political influences" and "interference with [the NLRB's] truly judicial functions". *National Labor Relations Board: Hearing on S. 1958 Before the Senate Comm. on Education and Labor, 74th Cong.*, at 115-16 (1935) (Sen. Wagner), Taylor Dec., Ex. 2 (adding that "a board of this kind [must] be absolutely free of any kind of political influence, or even a suspicion of being under any political influence, because if it is, it will be a failure").

This history makes explicit what *Garmon* left implicit: the Board's ability to apply its "specialized knowledge and cumulative experience" hinges on its "special[] constitut[ion]" *as an independent agency*. 359 U.S. at 242. This makes sense. It is well-established that the point of establishing independent agencies is to ensure they have the freedom to decide specialized problems by applying specialized expertise—rather than by attempting to appease a President.

*E.g. Trump v. Wilcox*, 145 S. Ct. at 1417 (Kagan, J., dissenting).[2] And the Supreme Court has continued to understand *Garmon* preemption to be linked to the Board's ability to apply its expertise *as an independent agency*. *Sears*, 436 U.S. at 191 (1978) (emphasis added) ("The [NLRA] protected the collective-bargaining activities of employees and their representatives and created a regulatory scheme to be administered by an *independent* agency which would develop experience and expertise in the labor relations area. The Court [in its decisional law that later culminated in *Garmon*] promptly decided that the federal agency's power to implement the policies of the new legislation was exclusive . . . .").

In short, *Owen*'s reasoning that lost independence negates the grounds for an agency's exclusive jurisdiction applies as much to the NLRB as to the MSPB. That the Courts of Appeal can decline to enforce NLRB decisions that are arbitrary and capricious or contrary to law is an insufficient safeguard against Presidential pressure to fail to enforce the Act. *First*, the Act's goals are harmed by the delay and expense needed to seek judicial review. *E.g. Silverman v. Whittall & Shon*, 1986 WL 15735, at *1 (S.D.N.Y. June 6, 1986) (explaining time needed to obtain enforceable court order chills worker organizing). *Second*, while courts might now review the NLRB's interpretations of law *de novo*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the NLRB's fact-findings and judgment-calls will still receive judicial deference, *McLamb v. NLRB*, 141 F.4th 1308, 1315 (D.C. Cir. 2025). *Third*, administrative law's high tolerance for agency *inaction* means that Board members who fear getting fired may undermine the NLRA by declining to take enforcement actions, *see Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (agency "[r]efusals to take enforcement steps" are presumptively not judicially

---

[2] Regulated parties have already started lobbying the Trump Administration to direct the NLRB's actions. *E.g. https://myprivateballot.com/wp-content/uploads/2025/04/CDW-letter-to-AG-Bondi_EO-14215_Apr-2025.pdf.*

reviewable), delaying issuing decisions, *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64

(2004) (claim under APA to compel agency action can proceed only where plaintiff asserts

agency failed to take a discrete agency action that it is required to take), and failing to undertake

necessary rulemaking, *Massachusetts v. EPA*, 549 U.S. 497, 527-28 (2007) (judicial review of

agency refusals to promulgate rules is "extremely limited" and "highly deferential"). *Fourth*, the

Wagner Act's drafters deemed independence necessary in part to preserve public confidence in

the NLRB, without which confidence they did not believe the Board could adequately fulfill its

function. *See supra* p. 9.

          (b)     The Board's dysfunction negates *Garmon*'s applicability.

               (i)     The Board no longer protects collective bargaining.

*Owen* suggests that the decades-long atrophy of the NLRB's ability to protect collective

bargaining since the lapse of the 1950's labor-management accord, *supra* pp. 4-5 & n.1, has

created a context so remote from *Garmon*'s as to undermine that decision's construction of

Congress's intent, given the NLRA's fundamental objective of advancing "meaningful collective

bargaining", *Brown* 518 U.S. at 237, and Congress's expectation that the Board would actively

"adapt the [NLRA] to changing" industrial realities to do so. *J. Weingarten*, 420 U.S. at 266.

"During the 1950's and 1960's, the prevailing view" was that "American managers had

accommodated to collective bargaining and accepted unions as legitimate and lasting parties to

the employment relationship." Thomas A. Kochan et al., <u>The Transformation of American

Industrial Relations</u> (1994), p. 14, Taylor Dec. Ex. 3. "[N]o one in the 1950s or 1960s foresaw

the changes in managerial behavior" that "stopp[ed] [and reversed] the expansion of [private

sector] collective bargaining." *Id.*, p. 8. *Garmon* could not have foreseen this, and should no

longer control. *See also United Const. Workers v. Laburnum Const. Corp.*, 347 U.S. 656, 669

(1954) (pre-*Garmon*, suggesting preemption inquiry should consider "whe[ther] the [NLRB's] preventive administrative procedures are impotent or inadequate").

(ii)      Lost quorums paralyze the Board.

Without a quorum, the Board can neither effect enforceable judgments nor fulfill its function of issuing new, precedential decisions for regional offices to follow in light of changing industrial realities. While lost independence and lost quorums are analytically separate bases why *Garmon* no longer is tenable, they bolster each other: Congress did not intend or contemplate that a President could deprive the NLRB of a quorum for any reason they please and for as long as they please. The current 10-months-and-counting lapse of quorum shows how, under *Garmon*, lost independence leaves this country perpetually on this edge of protracted voids of meaningful labor regulation.

Emphasizing matters that the NLRB's regional offices process ignores that no regional determination becomes an enforceable judgment against a party until it becomes a final Board order and then additionally is enforced by a Court of Appeal. *See* 29 U.S.C.A. § 160(c, e, f)*; RAV Truck & Trailer Repairs v. NLRB*, 997 F.3d 314, 319 (D.C. Cir. 2021) (hearing Board's cross-petition for enforcement); *Silverman*, 1986 WL 15735, at *1 (explaining that NLRB orders are not "binding" until enforced by court). When the Board lacks a quorum, the most an employer need do to prevent a regional determination in an unfair labor practice case from becoming an "order of the Board", 29 U.S.C. §160(c), that a "person aggrieved" may seek enforcement of, *id.* §160(f), is "fil[e]" "exceptions" to the regional determination with the Board, *id.* §160(c). The quorum-less Board cannot then issue a "final order". *See* §160(f) (courts possess jurisdiction over only petitions to review of "final orders"); *Harrison Steel Castings Co. v. NLRB*, 923 F.2d 542, 545 (7th Cir. 1991) ("[A] charged party may only seek judicial review of

Board *orders*—not Board 'findings,' or 'charges,' or 'actions'"). In fact, at present, employers needn't even file exceptions to delay ultimate determinations. That's because the NLRB's Executive Secretary has not received authority to adopt Administrative Law Judges' decisions and recommended orders as "the order of the Board" under §160(c) absent filed exceptions.

In a *representation* case, all an employer needs to do is object to a regional certification of representative (i.e. union wins election) by refusing to recognize and bargain with the union—triggering an unfair labor practice charge known as "test of certification"—and then follow the same playbook.[3] *See Boire v. Greyhound Corp.,* 376 U.S. 473, 477-78 (1964) (noting federal courts lack jurisdiction to review certification proceedings, and outlining test of certification process required to obtain enforceable judgment).

Employers know this all. *Supra* pp. 4-5 (describing Amazon's refusal to comply with regional director certification). Without a quorum, workers lack recourse when employers flout regional determinations.[4] Statistics about the NLRB's ability to settle cases at the regional level in Fiscal Year 2024—before the current quorum and independence and issues—thus tell us nothing about that ability while charged parties lack any prospect of enforceable judgments. Moreover, lost quorums will negatively impact the quality of settlements. When employers face no enforceable accountability, workers' best option might be to accept a paltry settlement they would have otherwise rejected. And five cases authorized by the Acting General Counsel for Section 10(j) proceedings is a trivial fraction of nationwide labor disputes.

---

[3] Relatedly, when a union disputes a regional certification of election results (union loses election) and files an appeal with the Board, it just sits without resolution due to loss of quorum.

[4] Reporting on how and in record numbers employers—including Amazon affiliate Whole Foods—have argued the quorum-less Board cannot resolve election disputes includes John Kruzel & Daniel Wiessner, *Frozen feud: How Trump and the Supreme Court helped put historic Whole Foods union bid on ice* (Reuters, Oct. 1, 2025).

The Court has already blessed an exception to *Garmon* permitting state regulation when parties "lack[] a reasonable opportunity to secure a Board decision on the legal status of the conduct at issue." *Glacier*, 598 U.S. at 777 n.1. This principle—adopted in *Sears*—heeded Justice White's admonition that *Garmon* must not "blindly pre-empt[]" when "there is no [ability to secure] an authoritative decision by the Board". *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 326 (1971) (White, J., dissenting); *see Sears*, 436 U.S. at 200-02, 206 (noting party must have opportunity to "obtain an orderly resolution" of dispute concerning conduct covered by NLRA). This concern equally applies when parties lack opportunity to secure a timely, enforceable judgment through the Board. In fact, Justice Powell noted that, in *Sears*, "[i]f an [NLRB] charge is filed, nothing is likely to happen 'in a timely fashion' . . . th[is] 'no-man's land' . . . is an open invitation to self-help . . . I am unwilling to believe that Congress intended, by its silence in the Act, to create a situation where there is no forum to which the parties may turn for orderly interim relief in the face of a potentially explosive situation." *Id*. at 213 (Powell, J., concurring). When employers lack the threat of timely, enforceable accountability from the government for violations of workers' labor rights, the conditions are likewise ripe for the explosive strikes that the Wagner Act intended to obviate. 29 U.S.C. § 151 (noting employers' refusal to accept collective bargaining and denying rights to organize led to such strikes, which the NLRA seeks to obviate).

This court should at least hold *Garmon* preemption is inapplicable when the NLRB lacks a quorum. But a better view is that the new precarity of Board quorums, given the NLRB's lost independence, shows *Garmon* no longer controls even if a quorum restores. Absent a quorum, states must initiate investigatory and enforcement proceedings that will take some time to run

their course. Rather than require those proceedings to cease and lose effect if and when the

quorum finally restores, this court should instead rule that *Garmon* preemption has ceased.

\* \* \*

Congress certainly would not have intended for the Court-created *Garmon* doctrine to

apply now when the President may halt the Board from enforcing the law with "You're Fired",

thereby shutting down labor law in both the federal government and states whenever and for

however long that President pleases. Or when the President may sway Board's enforcement

actions through that mere threat.

2.      *Garmon* improperly interpreted the NLRA.

*Garmon* is inconsistent with typical presumptions against preemption of state law absent

clear Congressional purpose to do so. *E.g. Glacier*, 598 U.S at 785-88 (Thomas, J., concurring)[5]

(citing cases). In fact, when Congress enacted the NLRA, there was doubt whether Congress was

empowered to regulate labor relations. *E.g. Allen-Bradley Loc. No. 1111, United Elec., Radio &*

*Mach. Workers of Am. v. Wisconsin Emp. Rels. Bd.*, 295 N.W. 791, 797 (Wis. 1941). Any intent

by Congress to so broadly exclude states from this domain would have therefore been

tantamount to inverting "the usual constitutional balance of federal and state powers." *Gregory v.*

*Ashcroft*, 501 U.S. 452, 460-61 (1991). Courts can infer such preemption only if Congress made

that intention "unmistakably clear in the language of the [NLRA]". *Id.*

Early interpretations of the NLRA recognized this. The presumption against preemption

was the starting point for *Wisconsin Lab. Rels. Bd. v. Fred Rueping Leather Co.*, a decision that

three years after the NLRA's enactment upheld a state scheme much like that created by the

---

[5] *Glacier*'s majority neither disputed this point nor endorsed *Garmon*. *See id.* at 776, 785. By
permitting state intervention while NLRB proceedings pended, *id.* at 798 n.2 (Jackson, J.,
dissenting), the majority also cast doubt on *Garmon*.

Amendment. 279 N.W. 673, 677, 679-80 (Wis. 1938). The court found no legislative history indicating a desire to preempt states, as opposed to centralize federal administration of federal labor law. *Id*. at 679-80. This conclusion was buttressed by analysis of the NLRA's Section 10(a) and conflict of law clause—which provided the NLRA prevailed over contrary federal law yet did not state the NLRA prevailed over contrary state law. *Id*. at 677-78. Specific applications of state law might be obstacle preempted, but Congress did not intend to so broadly divest states of labor regulation. *Id*. at 681; *see also Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am., Div. 998 v. Wisconsin Emp. Rels. Bd.*, 340 U.S. 383, 402-03 (1951) (Frankfurter, J., dissenting) (collecting Supreme Court decisions recognizing same).

   B.    *Bethlehem Steel* and *Committee of Interns* do not control.

   *Bethlehem Steel* held only that a specific application of SERA was conflict preempted. 330 U.S. 767 (1947). There, the Court faced the narrow question whether SERA was preempted "as applied to [petitioner employers] to permit unionization of their foreman." *Id*. 768, 776-77. The Court disclaimed field preemption. *Id*. at 774-775 (emphasis added) (reasoning state's permitting unionization was preempted because NLRB had "made clear that its refusal to designate foremen's bargaining units was a determination" that "such units *were not appropriate* for bargaining purposes"). The opinion's passages suggesting broader preemption considerations due to Congress's delegation of authority to the NLRB were dicta. Regardless, the same reasons *Garmon* does not control and improperly interpreted the NLRA apply to those passages.

   It was in this dicta that *Bethlehem Steel* rejected that states may certify bargaining units "until the [NLRB] has acted in the same case". 330 U.S at 776. Regardless, the NLRB misreads the Amendment—and makes a red herring of SERA § 715(1)(b)—in suggesting that it creates a scheme like the rule that *Bethlehem Steel* here rejected. Parties to PERB proceedings can always

allege that specific applications of the Amendment are conflict preempted—and in every case, there will be a party with the incentive to do so if they believe they have a meritorious preemption argument.[6] Resulting precedent will control future cases. If somehow PERB does not abide these precedents, parties can cite them to enjoin preempted applications. This Court thus need not even reach whether § 715(1)(b) purports to state that PERB will continue exercising jurisdiction over a given case unless the NLRB obtains an order as to that particular case.

Nor does *NLRB v. Committee of Interns and Residents* control. 566 F.2d 810 (1977) ("*CIR*"). At bottom, *Garmon* drove that decision's result. *Id.* at 815-816 ("[p]rimar[ily]" relying on *Garmon*, and citing Congress's creation of "expert" NLRB). *CIR*'s force thus falls with *Garmon*. If the court deemed *CIR* to support conflict preemption absent *Garmon* (it should not), that preemption would be limited to any decisions by PERB to permit bargaining units that include employees covered by the NLRA's Health Care Amendments for whom the NLRB has determined "collective-bargaining rights would be contrary to [NLRA] policy". *Id.* at 813, 816 (relying on supposed conflicts between hospital-specific provisions in NLRA and SERA).

C.    The Amendment is not obstacle preempted.

When *Garmon* does not apply, states are not preempted from using different enforcement methods to combat conduct that the NLRA covers. *UAW-CIO v. Russell*, 356 U.S. 634, 637 n.2, 641, 644-46 (1958) (citing *Laburnum*) (upholding state punitive damages against certain conduct prohibited by NLRA, although NLRB lacks power to assess same); *see also Linn v. United Plant Guard Workers of Am., Loc. 114*, 383 U.S. 53, 60-61, 65-66 (1966) (similar); *Sweeney v. Pence*, 767 F.3d 654, 665 (7th Cir. 2014) (where NLRA did not preempt regulation, state could enact

---

[6] Amazon has already done so. *Amazon.com Services LLC v. New York PERB et al.*, 25-cv-05311-EK-MMH (E.D.N.Y.).

penalties). Indeed, obstacle preemption—particularly of exercises of states' "traditional police power" such as "New York [l]abor [l]aw"—requires a conflict "so direct and positive that" the two acts "cannot be reconciled". *Madeira v. Affordable Hous. Found.*, 469 F.3d 219, 241-42 (2d Cir. 2006). Mere "tension" between federal and state law is insufficient. *Id.* Not even *Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.* suggests any application of the Amendment is obstacle preempted. 959 F.3d 1201 (9th Cir. 2020) (*"Volkswagen"*). That decision noted federal *immigration* law has in one case obstacle preempted a certain state *immigration* law "involving a different method of enforcement". *Id.* at 405-06. Yet *Madeira* concluded federal immigration law did not obstacle preempt state *labor* law—which unlike state immigration law is presumptively not preempted—that might undermine federal immigration policy. *See* 469 F.3d at 241-42, 247-49 (concluding plaintiffs did not establish law posed "definite" obstacle to "the full purposes and objectives of Congress"). Moreover, differing state and federal standards are pervasive in concurrent regulation of firms and employment. *E.g. California v. ARC Am. Corp*, 490 U.S. 93, 100-02 (1989) (Sherman Act, which lacks savings clause, construed to permit states' enforcement standards to differ from federal); Cal. Bus. & Prof. Code § 16600 (prohibiting non-compete agreements that the current federal balancing standard, *see Caudill v. Lancaster Bingo Co.*, 2005 WL 2738930, at *3-4 (S.D. Ohio Oct. 24, 2005), permits); *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1196 (9th Cir. 2002) (Title VII permits different state remedies).

    Plaintiff makes no argument that the Amendment is preempted under *Madeira*'s standard. It just incorporates its arguments that *Garmon*, *Bethlehem Steel*, and *CIR* control. Nor could the Amendment be facially obstacle preempted absent *Garmon*. The Amendment in no way bars anyone from bringing charges to the NLRB and seeking the NLRA's protections. It merely

permits PERB to advance the same fundamental policies of the NLRA, often through identical or nearly identical standards and processes. *E.g.* Mot. 25 (noting "virtually identical" standards). This accords with the NLRA's "full purposes and objectives" especially considering that the NLRB has itself proved incapable of, on its own, protecting the NLRA's fundamental objective of protecting collective bargaining. The NLRB has even now shed the independence without which Senator Wagner and others forecasted the NLRB would fail. Even where SERA's standards and processes diverge from the NLRA, such differences are consistent with the NLRA's purposes and not preempted. And should any applications prove to impermissibly conflict, such conflict supports only an as-applied challenge, given SERA' separability clause.

D.    <u>Sections 10(a) and 14(c) are not exclusive bases for state regulation</u>.

The plain text of Sections 10(a) and 14(c) bars concluding they are exclusive gates to state regulation. These sections only address the NLRB's authority to cede or decline its jurisdiction—i.e., to tell parties: "Don't come here"—and make clear that the NLRB's doing so does not deprive states of their jurisdiction. Against the NLRA's baseline of concurrent federal and state jurisdiction, *supra* I.A.2, these provisions just set forth two circumstances in which *only* states will exercise jurisdiction. Section 10(a) says the Board's "power" to "prevent any person from engaging in any unfair labor practice [under the NLRA]. . . shall not be affected by any other means of adjustment or prevention . . ." 29 U.S.C. § 160(a). The proviso then simply "provide[s]" that the Board is "empowered" to agree "to cede to [any state] jurisdiction over any cases in any industry." *Id*. Facially and in context of the language it qualifies, this proviso addresses the NLRB's ability to agree that only the state will hear certain cases. It does not say states may not exercise concurrent jurisdiction over NLRA-covered conduct absent such agreement. It does not even say the only way the NLRB may cede such jurisdiction is by such

agreement. 14(c), in turn, simply provides the Board may "decline" jurisdiction over certain disputes, and makes clear states may still hear those disputes. *Id*. § 164(c). This neither bars states' concurrent jurisdiction over conduct as to which the NLRB has not declined jurisdiction, nor purports to exclude other circumstances in which the NLRB may decline jurisdiction.

The Supreme Court made clear that Sections 10(a) and 14(c) are not the exclusive avenues to state jurisdiction when—long after those provisions' enactments—it created the rule that states may intervene when parties "lack[] a reasonable opportunity to secure a Board decision on the legal status of the conduct at issue." *Glacier*, 598 U.S. at 777 n.1 (citing *Sears*). The Court could not have announced this new exception to preemption if it understood 10(a) and 14(c) to exhaustively codify the bases for states' jurisdiction. *Guss*'s suggestion that 10(a) is the exclusive means for state regulation is therefore bookended by contrary Supreme Court authority. *Id*.; *Laburnum*, 347 U.S. at 657, 659 n.2, 667-69 & n. 9 (reasoning based on text and legislative history that 10(a) did not exclude state remedies for conduct within NLRB's jurisdiction); *accord Russell*, 356 U.S. at 641, 644-46; *see also Guss*, 353 U.S. at 14-19 (Burton, J., dissenting). *Guss*'s suggestion thus does not control. Nor does *CIR*'s dicta, which relied on *Guss* and just spoke to whether the NLRB intended to cede jurisdiction, not to whether states could ever intervene absent such cession. 566 F.2d at 813 & n.3.

10(a)'s proviso and 14(c) both constituted Congressional correctives to specific Supreme Court decisions diminishing states' authority. 10(a)'s proviso rejected *Bethlehem Steel*'s negation of a cession agreement between the NLRB and state. *Guss*, 353 U.S. at 16 (Burton, J., dissenting). Section 14(c) responded to *Guss*'s divesting states of jurisdiction when the Board declined jurisdiction on commerce-threshold grounds. *Lockridge*, 403 U.S., at 315-16 (White J., dissenting) (describing congressional revulsion at *Guss*'s creation of "no-man's land", and noting

14(c) aimed to "fill th[is] chasm" and casts "doubt' on *Garmon*'s "foundations"). That Sections 10(a) and 14(c) do not expressly assert that states otherwise have concurrent jurisdiction does not exclude that jurisdiction. *See Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 186 (1994) (rejecting reliance on Congressional silence in legislative amendments).

If this Court nonetheless concludes Congress intended Sections 10(a) and 14(c) to be exclusive in the world as it looked in 1959, the Court should recognize that same Congress would not have intended them to be exclusive today. First, whereas the NLRB has proved incapable of protecting collective bargaining after the labor-management accord's breakdown, state public sector bargaining administrative schemes have proliferated since 1959, providing additional regulatory infrastructure these states lacked before then. Second, courts have never yet held that, without a quorum, the Board can issue the orders needed to effect such delegations under 10(a) or 14(c). 29 U.S.C. § 153(b) (omitting such orders from matters Board may delegate to regional directors). Third, without independence, the NLRB might withhold its agreement to delegate matters to states for a reason that Congress expressly intended would *not* influence the NLRB's decisions. Namely, the President's telling NLRB members they will be fired if they agree to delegate matters to states. Perhaps Jeff Bezos or Elon Musk—who had front-row seats at this President's inauguration—don't want state jurisdiction over the many labor disputes against their companies. Or the President might just want to stymie a state the President doesn't like.

E.    Preemption would contravene the 10th Amendment.

For preemption to satisfy the 10th Amendment, the federal law must be "best read as one that regulates private actors," as opposed to one that really just directs states to not regulate. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471, 477-78 (2018). This principle should be understood or extended to require the federal law not just formally regulate private

actors, but instead "meaningfully achieve the purpose for which it was passed." *Cf. Ass'n To Pres. & Protect Loc. Livelihoods v. Sidman*, 147 F.4th 40, 71-72 (1st Cir. 2025) (conducting this inquiry of state law in dormant commerce clause analysis). In recent decades, the NLRB ceased to do so. It certainly does not do so when it cannot effect enforceable orders.

## II.    Plaintiff is not threatened with irreparable harm.

The statement that states must not alter the "balance of bargaining and economic power that the NLRA establishes", Mot. at 19 (citing *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1337 (D.C. Cir. 1996)), is just a shorthand for describing *Machinists'* preemption. *Id*. at 1334-1335, 1337-1338 (distinguishing *Garmon* and *Machinists* preemption). *Machinists'* preemption applies only when governments regulate uses of bargaining parties' economic weapons that Congress intended to be left unregulated. *Id*. at 1334. SERA does not do so, which is why the NLRB rightly never argues *Machinists* preemption. *See also Amazon.com Services LLC v. New York PERB et al.*, 25-cv-05311-EK-MMH (E.D.N.Y.), Dkt. 31-1, pp. 26-30 (Intervenor's brief explaining Amendment is not *Machinists* preempted).

The NLRB rightly has not claimed that the supposed discrepancies between the NLRA and SERA that it claims create irreparable harm support finding obstacle preemption. As shown below, they create no conflict—much less one satisfying *Madeira's* standard. Conflict's absence also defeats the NLRB's reliance on these provisions to claim irreparable harm. Furthermore, PERB has not yet had occasion to interpret how any of SERA's provisions apply in cases involve NLRA-covered employees. When it does, it can assess whether particular applications of SERA precedents to those employees would impermissibly conflict with the NLRA, and, if it so determines, it can construct SERA accordingly as to those applications to avoid those conflicts. Any claim that PERB will not do so is too speculative to establish irreparable harm.

The only effect of N.Y. Lab. Law 715(2)'s certification provisions as to NLRA-covered employees is that PERB will, upon application and verification, certify any unit *that the NLRB has certified*. PERB's deferring to the NLRB's application of its own procedures is no conflict.

PERB has interpreted SERA to include the right to refrain. *E.g. Paumanok Vineyards & Palmer Vineyards*, 55 PERB ¶ 3401 (2022). Regardless, SERA in no way impairs the NLRB's authority to apply its protections for the right to refrain and its prohibitions against unfair labor practices ("ULPs") by unions. Any person that thinks a union has committed a ULP or that any union or employer has infringed employees' right to refrain may file a charge with the NLRB.

PERB has likewise interpreted SERA to recognize the same speech protections as the NLRA's section 8(c). *Amazon.com Services LLC.*, 25-cv-05311-EK-MMH (E.D.N.Y.), Dkt. 30 p. 28 (collecting and attaching authority). This makes sense. Section 8(c) "merely implements the First Amendment." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969). It does not confer additional rights. If any provision of SERA were inconsistent with Section 8(c), that provision would have failed First Amendment challenge long ago.

Preemption claims do not, without more, establish irreparable harm. *Chan v. United States Dep't of Transportation,* 2024 WL 5199945, at *46 (S.D.N.Y. Dec. 23, 2024); *United States v. City of New York*, 2013 WL 12361934, at *5 (E.D.N.Y. Jan. 31, 2013). Employees' and employers' simultaneous exposure to both state and federal labor law is neither "confusing" nor otherwise a grounds for finding irreparable harm. Employees and employers are already pervasively subject to both state and federal employment and antitrust laws. Often, states' laws in these domains differ in substance and procedure from federal law. That's just federalism.

Plaintiff points to no situation in which PERB and the NLRB could issue orders that are mutually impossible for a party to comply with. Nor raises a non-speculative basis to think that,

should such situations exist, the agencies would fail to coordinate to avoid that outcome. Should they threaten such orders, a party may seek to enjoin the PERB proceedings via an as-applied challenge. Should they issue such orders, the party may appeal PERB's order on, inter alia, preemption grounds, and courts may stay the order pending appeal. N.Y. Lab. Law. § 707(4-5).

Plaintiff's authorities involve harm resulting from a single party facing "a large number of proceedings to be heard by a mix of arbitrators" for the same conduct, *Gov't Emps. Ins. Co. v. Strutsovskiy*, 2017 WL 4837584, at *6 (W.D.N.Y. Oct. 26, 2017), or facing improper arbitration which would have a "preclusive effect" on existing Court proceedings. *N.Y. Bay Capital, LLC v. Cobalt Holdings, Inc.*, 456 F. Supp. 3d 564, 574 (S.D.N.Y. 2020). But neither of these concerns is present here. Parties generally pick a forum to proceed in. Sylla initially filed in the NLRB rather than PERB because the Amendment had not taken effect, and Sylla's PERB charge was precipitated by new conduct—his termination—not at issue in his NLRB charge. Plus, PERB's provision recognizing NLRB certifications obviates new proceedings to determine whether to recognize a Union. And Plaintiff points to no way that PERB proceedings will have a "preclusive effect" on NLRB proceedings.

Section 715(1)(b) is a red herring, as explained. And the NLRB already permits allegations raised outside Section 10(b)'s 6-month period provided they are "closely related" to allegations in a charge that was filed within that period. *Redd-I, Inc.*, 290 NLRB 1115, 1115-16 (1988). This principle extends to permit the NLRB to hear the charges Plaintiff claims might be squandered, Mot. at 23, since a PERB charge gives charged parties "notice" of the claims against them. *Id*. at 1116. Even were this not so, the Amendment in no way deprives parties of their option to file charges with the NLRB instead of with PERB. Any risk the NLRB points to is one the charging party chooses to assume.

### III.    The balance of hardships and public interest weigh against an injunction.

An injunction prevents unions like Intervenor from fulfilling their core function: protecting employees' right to organize and collectively bargain. The Union's history with Amazon and the NLRB proves so. To recap: JFK8 employees petitioned for a Union election in December 2021. The Union won that election in April 2022. Amazon to this day has abused the processes after certification of the Union required good faith bargaining and has outright refused to bargain with its workers' chosen representative over terms and conditions of employment.

Preserving a functional forum for the Union to enforce its members' rights advances the public interest, too, by realizing fundamental public policies undergirding both the NLRA and SERA. *Brown*, 518 U.S. at 237 (discussing federal labor policy of promoting meaningful collective bargaining); 29 U.S.C. §151 (same); N.Y. Lab. Law § 700 (same state policy). The NLRB is not adequately enforcing labor laws in New York, and has even ceased defending against certain constitutional challenges to its own structure. The state must protect its citizens' rights to organize and bargain, as well as their freedoms of speech, association and assembly.

### <u>CONCLUSION</u>

The Court should deny Plaintiff's motion for preliminary injunction.

//

//

//

//

//

//

//

DATED: December 1, 2025

BUSH GOTTLIEB, ALC
Julie Gutman Dickison (*Pro hac vice*)
jgd@bushgottlieb.com
Jennifer A. Abruzzo (*Pro hac vice pending*)
jabruzzo@bushgottlieb.com

_____
Julie Gutman Dickinson *(Pro hac vice)*

    Attorneys for Amazon Labor Union No. 1,
International Brotherhood of Teamsters