# EXHIBIT 2

Case 1:25-cv-01283-GTS-ML    Document 38-3    Filed 12/01/25    Page 2 of 3

Mr. GREEN. No; and in fact the strike that was in existence there was declared off on the basis of this understanding, and the men went back to work, and they were tricked.

Senator MURPHY. You regard it as a clear case of faith?

Mr. GREEN. It was certainly a clear breach of faith. He had said directly "You handle it."

Senator MURPHY. Then you were tricked into calling off the strike?

Mr. GREEN. Yes; we were tricked into calling off the strike, because we accepted this in good faith, and then the Board was denied the right to supervise, hold, and oversee the election. When Mr. Weir said "You handle the election", I then said, "Would it be well to allow this Board to handle the election?" Then Mr. Weir said, "We want you to oversee it." I then said, "Supervise it", and Mr. Weir said "Supervise it and oversee it, so that there is not any question."

I wish to make this observation just now, that there are two ways in which we can promote cooperation and human relationship in industry. One is through the application of orderly processes, the rule of reasons, collective bargaining, discussion face to face, and in a frank way, and then if you cannot agree let the arbitration boards make their awards. Now, that is one way, through a national board set up by the Government, representing all of the people, to determine questions of collective bargaining as provided for in the Wagner bill.

When an issue is drawn between the employer and employee, let the board decide and settle it in an orderly way while the plant is in operation.

Now, the other plan is to abandon it all, to deny industry and workers of the country the benefit of a bill such as the proposed Wagner bill, and go back to the old method of the survival of the fittest. The workers still have their economic strength; they can strike and fight; but that is not what the people of the United States want.

Now, what is the best way to set up the board provided for in this bill to make it possible to bargain collectively, or go back to the old processes, the law of the jungle, the tooth and the jowl, the survival of the fittest, force rather than reason. I draw the distinction, this is the road of reason, and without it you follow the road of force.

Now, I favor the setting up of the board as provided for in that bill with this exception, that I am of the opinion the board should be lodged in the Department of Labor. I concur in the recommendations of the Secretary of Labor that it should be connected with the Department of Labor, independent, however, with no right of review of any of its decisions or interference with its judicial processes.

It appears to me, that inasmuch as the Department of Labor is the real Department of Labor where the activities of the Government regarding labor matters are carried on, that the Board set up to deal with labor and labor problems ought to be separate in the Department of Labor.

Senator MURPHY. Independent of review by the Secretary of Labor.

Mr. GREEN. No; I would not have the Secretary of Labor review its decision.

Senator MURPHY. That is what I say, without review by the Secretary of Labor.

Mr. GREEN. Oh, yes; I would want to have the Board to be absolutely independent and free to utilize the machinery of the Labor Department such as the Statistical Department, the Mediations Department, and the Research and Planning Division, but without review by the Secretary.

You know labor is a bit sentimental, because it feels that the Department of Labor is set up for labor. We appealed to Congress for the creation of a Labor Department for years and years. Congress responded, the Labor Department is there, and we have a peculiar interest in that Department.

Senator WAGNER. Of course, we do not agree upon this proposition, but I was going to ask, do you think the Secretary of Labor should have control over the personnel of the Labor Relations Board?

Mr. GREEN. No; I think they should be appointed by the President.

Senator WAGNER. I am speaking about the personnel within the Labor Relations Board. Do you think the Board should appoint their own subordinates, such the secretary, and the people they need to conduct its operations.

Mr. GREEN. That has been the policy, and I should favor the continuation of that policy.

Senator WAGNER. I understand the Secretary now thinks the Secretary of Labor should have the veto of any appointments made by the Board.

Mr. GREEN. I did not understand that.

The CHAIRMAN. I do not understand she made that suggestion.

Mr. CHARLES E. WYZANSKI, Jr. (Solicitor, Department of Labor). I think Senator Wagner has correctly interpreted the Secretary's testimony.

Mr. GREEN. That is a detail I had not taken into account.

Senator WAGNER. I think it is important, because we are not going always to have Miss Perkins here. If Miss Perkins was here I would not contend for any of these things, but she is not going to be here forever, and we are providing for the future, and I think for the Department of Labor to have control of the personnel carrying out quasi judicial functions might inject politics or political influences into a board that ought to be free.

The CHAIRMAN. Mr. Wyzanski, you understand Miss Perkins desires to give her approval or sanction, or veto to any appointments made by this Board.

Mr. WYZANSKI. I understand that as regards the members of the Board the Secretary feels the President ought to appoint them, and as regards the employees of the Board she desires that the Board should make recommendations with the right of veto in the Secretary of Labor.

Mr. GREEN. I had not gone into that, but what I had in mind, the Mediation Department is in the Department of Labor, and the Statistical Research Department is in the Department of Labor, and the services of these bureaus are available for the use of the Board, and the people in these departments are appointed by the Secretary of Labor, as I understand.

The CHAIRMAN. There is a situation that may be corrected in the bill, where people doing the same kind of work, employees doing the

same kind of work under the Board, in many instances paid more than the employees in the Department of Labor doing the same kind of work.

Mr. WYZANSKI. I think that is probably true.

Senator WAGNER. What I had in mind, or at least my aspiration is to have a board of this kind to be absolutely free of any kind of political influence, or even a suspicion of being under any political influence, because if it is, it will be a failure. The moment you have an administrative officer controlling a judicial body of that kind, you are apt to have an interference with truly judicial functions by a political appointment.

That is the reason I though the board ought to absolutely control its own personnel. I am speaking not personally now, because I want to repeat I have the utmost faith in Miss Perkins, and if we could guarantee she would be here forever, I would not raise that question.

Senator DONAHEY. This act attempts to create a quasi-judicial board on matters of labor?

Mr. GREEN. Yes, sir.

Senator DONAHEY. In our own State of Ohio, Mr. Green, of which I have knowledge, we created an industrial commission, and they have the board. The commission was appointed by the Governor, with the quasi-judicial board to pass on compensation matters, and the duties were different. Each and every session of the general assembly during my incumbency as auditor of that State there was a constant fight between them on appropriations, and the changing of duties one to the other, and that exists today. In my opinion, for the benefit of labor, I would keep this quasi-body free and apart and give it full and reasonable power so that you can hold them responsible at all times.

Mr. GREEN. I recall that matter to which you refer in Ohio. I am not going to question your point of view, but I am saying what we think would be the best thing.

Senator MURPHY. Of course, Mr. Green has already explained he was not familiar with that provision.

Mr. GREEN. I think the board ought to be in the Department of Labor, free and independent in the exercise of its judicial functions, with a provision that the Secretary of Labor or anyone else should not review or veto any of its decisions. It could be free and independent in that respect, but with a close relationship existing between the Department of Labor and the board so that there could be perfect harmony and cooperation, and the utilization of the machinery of the Department of Labor by the board, such as the mediation machinery, the conciliation machinery, and the statistical machinery of the Department.

The CHAIRMAN. Do you think it would be helpful also to have this board report to the Department of Labor from time to time its activities and its decisions, so that the Secretary of Labor may be informed of the contests and the settlement of the contests between labor and employees that come to the attention of the board?

Mr. GREEN. Yes; I think that should be done.

At this time, let me quote at random from a few of the reports in my office. From the State of Washington comes this:

> Membership solicited by officials of the plant. Application cards bearing notation "company union members to be given preference in work, promotion, etc." Meetings held in plant, cards and literature given out by management.

From New York City we hear:

> This company union was formed by forcing the workmen to sign up by the foremen of the various departments, under threat of layoff if they did not sign.

A union in Michigan reports:

> The company union was put to a vote by the workers and voted down. And then we, the workers, were given application blanks to join the company union anyway.

From Pennsylvania we receive a report that:

> When the N. R. A. took effect, the employees were forced to vote for officers to form this company union. The men had to vote before they could receive their pay on a pay day, and that is the way it started.

From Augusta, Ga., we hear this:

> The company union was organized as the Good Citizen Club by the mill management. A worker has to join the company union to get work in the mill.

While this report comes from North Carolina:

> Management persuaded two of our members to start it, and the workers not members of our union were first to be added. Then our other members were approached, and a small percentage turned into members of the Loyalty Club, the company union.

Employers must keep hands off, completely, so far as labor organizations are concerned. Any other course of action cannot be reconciled with the belief which we all profess that employees are free citizens of the United States, and are not a menial or servant class, subservient to and controlled by the employing class.

Employers should bear no part of the expense of a labor organization. Labor unions are maintained for the benefit of employees, and they should be maintained by the employees themselves. It is a fundamental principle that a real contract can be made only when each party to the contract is free from control by the other. When employers contribute financially to any organization of their employees, they are in a position to bring direct influence to bear on the actions of that organization.

It is highly significant that section 7 (a) has been interpreted in substantially the same manner by every board set up to interpret and enforce its provisions, with the one exception of the Automobile Labor Board. I do not want at this time to enter into a discussion of the Automobile Labor Board and the failures of its chairman to fulfill honorably his high office. It is also highly significant in this regard that the Automobile Labor Board is the only Board whose constitutionality has not been challenged by employers, and which is not prevented from action by injunction.

Now I want to go to the question of majority rule as my next point. The National Labor Relations Board early established the principle of majority representation in collective bargaining through the Houde and other decisions. The Executive orders of President